IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NETEXIT, INC., *et al.,* | : | Case No.  04-11321 (JLP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |
| NETEXIT, INC., | : | Adversary Proceeding |
| | : | No. 05-_____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE COMPTROLLER OF THE CITY | : | |
| OF NEW YORK, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**VERIFIED COMPLAINT FOR DECLARATORY,
TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

Netexit, Inc. ("Netexit" or the "Debtor")[1], the plaintiff (the "Plaintiff") in the above-

captioned adversary proceeding, alleges for its complaint against The Comptroller of the City of

New York (the "Comptroller" or the "Defendant"), upon knowledge of its own acts and upon

information and belief as to all other matters, as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334.  This adversary proceeding is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2).  Venue of this Chapter 11 case and this action are proper before this Court

---

[1]    In addition to Netexit, Inc., the jointly administered and substantively consolidated debtors consist of the
following entities: Eagle a Netexit Company Inc., Netexit of California, Inc., Netexit of California Construction,
Inc., Netexit of Hawaii, Inc., Netexit of Indiana, Inc., Netexit of Indiana, LLC, Netexit of Mississippi, Inc., Netexit
of New York, Inc., Netexit of Oklahoma, Inc., Netexit of Pacific Northwest, Inc., Netexit of Tennessee, Inc., Netexit
of North America LLC, and ATS Financial Services, Inc. (collectively, the "Debtors").

pursuant to 28 U.S.C. §§ 1408 and 1409.  This proceeding has been brought in accordance with

Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.      The Comptroller has invoked the exclusive jurisdiction of this Court, by filing its

Proof of Claim (as defined below) in the Debtors' bankruptcy cases, to resolve the Comptroller's

Claims (as defined below) against Netexit.

## PARTIES

3.      Plaintiff is a Delaware corporation with its headquarters in South Dakota.

4.      Upon information and belief, Defendant, The Comptroller of the City of New

York is an agency of The City of New York charged, with inter alia, enforcement of New York

State labor laws in the City of New York, with offices located at 1 Centre Street, Room 1122,

New York, New York 10007-2341.

## NEED FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

5.      By this Complaint, Netexit seeks the Court's assistance in staying the continued

prosecution of the Petition (as defined below), against the Debtors' substantively consolidated

estate, under Sections 105 and 362 of the Bankruptcy Code.

6.      Alternatively, pursuant to Section 105 and 362 of the Bankruptcy Code, the

Plaintiff seeks entry of a preliminary injunction to enjoin the prosecution of the Petition while

the Debtor formulates its liquidating plan.

7.      The Plaintiff specifically seeks, by a separate motion filed contemporaneously

herewith, the issuance of a temporary restraining order to restrain the Comptroller from the

continued prosecution of the Petition, between the date of filing this Complaint and the date the

Court rules on the Plaintiff's request for a preliminary injunction.  Without a temporary

restraining order, the Comptroller will continue to prosecute the Petition.

8.      The relief is necessary to provide Netexit with the full protection of the automatic stay and, more importantly, to prevent the unnecessary depletion of the Debtors' limited assets and otherwise preserve the Debtors' substantively consolidated estate for the benefit of their creditors and other interest holders.

## FACTUAL ALLEGATIONS

## BACKGROUND

**A.    Commencement of the Chapter 11 Cases**

9.      On May 4, 2004 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code and no trustee has been appointed in these proceedings.

10.     On July 12, 2004, Netexit and its subsidiary debtors filed their Motion for an Order Substantively Consolidating the Estates of Netexit, Inc. and Its Subsidiary Debtors (Docket Entry 98).

11.     On September 15, 2004, this Court entered the Order Granting Substantive Consolidation of the Estates of Netexit, Inc. and its Subsidiary Debtors (Docket Entry 182).

12.     The Debtors are no longer operating businesses and currently have no employees. Pursuant to a transaction that closed on November 25, 2003, the Debtors sold substantially all of their assets to Avaya, Inc. ("Avaya").

13.     Netexit, Inc., formerly known as Expanets, Inc. ("Expanets"), was a nationwide provider of networked communications and data services and solutions to small to mid-sized businesses.  Expanets, itself and through its subsidiaries, offered services including voice and data networking, internet connectivity messaging systems, advanced call processing applications, computer telephony, networking management and carrier services.

14.    As a result of the sale of substantially all of the assets of Expanets to Avaya, Netexit and its subsidiaries were left with certain liabilities and the proceeds of the asset sale, but without the going-concern business necessary to generate ongoing revenues.

15.    The Debtors have sought relief under Chapter 11 of the Bankruptcy Code in order to obtain a moratorium on their liabilities and various litigation, and to efficiently and economically resolve claims against their estates and equitably distribute the Debtors' assets.

**B.    The Comptroller of the City of New York's Proof of Claim**

16.    On December 29, 2004, the Comptroller filed a proof of claim, designated claim number 253 by the Debtors' claims agent, in the Debtors' substantively consolidated bankruptcy case, alleging the identical claims as set forth in the Petition (the "Proof of Claim"). A copy of the Proof of Claim is attached hereto as Exhibit A.

17.    All of the Workers listed in the Petition have filed individual proofs of claim against the Debtors' estates for the same claims asserted by the Comptroller in the Proof of Claim. The Workers claims include claims filed by: (i) Felix Adams (Claim Number 199, filed 10/29/04); (ii) Wayne R. Belnavis (Claim Number 201, filed 10/29/04); (iii) Luidgy Casimir (Claim Number 204, filed 10/29/04); (iv) David Daniels (Claim Number 211, filed 11/1/04); (v) Jose Fernandez (Claim Number 203, filed 10/29/04); (vi) Victor Ibarra (Claim Number 193, filed 10/29/04); (vii) Secudino Lebron (Claim Number 194, filed 10/29/04); (viii) Euginio Magan (Claim Number 206, filed 10/29/04); (ix) Oliver May (Claim Number 205, filed 10/29/04); (x) Walter McLeod (Claim Number 198, filed 10/29/04); (xi) Roger Mike (Claim Number 210, filed 11/01/04); (xii) Santos Paredes (Claim Number 197, filed 10/29/04); (xiii) Rubin Rivera (Claim Number 196, filed 10/29/04); (xiv) Robert Suero (Claim Number 191, filed 10/29/04); (xv) Luis

Taveras (Claim Number 235, filed 10/29/04); and (xvi) James Winston (Claim Number 202, filed 10/29/04).

**C.      The Notice of Hearing Before the Office of Administrative
         Trials and Hearings**

18.      On January 26, 2005, the Comptroller filed a Notice of Hearing (the "Notice") and Petition (the "Petition"), LL Case No. 20021215, before the Office of Administrative Trials and Hearings ("OATH"), alleging violations of the New York State Labor Laws.  A copy of the Notice and Petition is attached hereto as Exhibit B.

19.      The Petition alleges that: (i) Expanets (now Netexit) performed work on City of New York, Human Resources Administration contract Number: 20020001339 (the "Contract"), providing telecommunications maintenance and support services at various locations throughout the city of New York; and (ii) Expanets willfully violated the New York State Labor Law by failing to pay Workers[2] prevailing wages and bona fide wage supplements and failed to produce any original books and records relating to the wages paid and supplements provided by Expanets to the Workers (collectively, the "Comptroller's Claims").

20.      The Petition seeks findings by OATH against Netexit that: (i) Netexit willfully violated § 220(3) of the New York State Labor Law by failing to pay prevailing wages and bona fide wage supplements to the Workers on the Contract as calculated on the Summary of Underpayment attached to the Petition; (ii) as a consequence of the violation of the Contract, Netexit be placed on probation for a period of five years, pursuant to § 220-b(3)(b) of the New York State Labor Law; (iii) interest be assessed against Netexit at the statutory rate of sixteen percent (16%) per annum from the date of each underpayment; and (iv) a twenty-five percent (25%) civil penalty be assessed against Netexit.

---

[2]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Petition.

21.    The Petition seeks to assess a total violation against Netexit of $2,630,054.90

(including interest and civil penalties as of January 25, 2005).

22.    Pursuant to the Notice, a hearing has been set before OATH on the Petition for

March 21-22, 2005.  Netexit's answer to the Petition (the "Answer") is due on or before

Wednesday, February 9, 2005.

**D.    Netexit's Attempts to Resolve the Dispute with the Comptroller**

23.    On or about January 30, 2003, the Comptroller notified Netexit, then Expanets,

that an employee had filed a claim regarding the payment/non-payment of prevailing wages.

The claim underlying this notice was filed in December of 2002.

24.    In response to the notice, Netexit advised the Comptroller that it was willing to

cooperate with any investigation.

25.    Despite this response, Netexit heard nothing from the Comptroller until early

December of 2003, when, along with private counsel for several prevailing wage claimants,

Netexit initiated contact with the Comptroller to discuss the status of claims that had been filed

with the Comptroller.  During this call, the Comptroller requested from Netexit copies of job

specifications for the work at issue.

26.    On December 9, 2003, Netexit complied with the Comptroller's request, and

extended an offer to further assist with the Comptroller's analysis.

27.    On January 9, 2004, Netexit sent a letter to the Comptroller (the "January 9

Letter"), providing an overview of the work which was performed by its employees on the

projects covered by the Contract, discussing issues relating to the underlying claims, and

introducing certain defenses to those claims.  A copy of the January 9 Letter is attached hereto as

Exhibit C.  In this same letter, Netexit again expressed a willingness to work with the
Comptroller.

28.     Subsequently, on or about January 20, 2004, Netexit received from the
Comptroller a Notice to Produce and Examination, dated January 12, 2004.   In this Notice, the
Comptroller directed Netexit to appear with and testify regarding certain documents identified in
the Notice.  When it received this Notice, Netexit had already sold its assets, including the
Amityville, New York facility which is the subject of the inquiry at issue, to Avaya.

29.     Following a request by Netexit, the Comptroller rescheduled the production and
examination for March 18, 2004.

30.     On March 18, 2004, Netexit appeared, by and through counsel, at the
Comptroller's New York City office.

31.     On this same date, the Comptroller advised Netexit that five individuals had filed
claims, and provided Netexit with copies of these claims.

32.     Also on this date, Netexit explained that it was engaged in efforts to resolve
disputes regarding the prevailing wages with the complainants, through their counsel.  After
extensive discussions, it was agreed during this meeting that the private parties would continue
settlement efforts, and that, if those efforts did not result in a settlement, Netexit would advise
the Comptroller of that fact, and the Comptroller would send a revised Notice to Produce and
Examination, setting forth a new date to appear.

33.     Before Netexit ever had a chance to contact the Comptroller, and while
negotiations with the claimants' private counsel were ongoing, the Comptroller began
withholding money under the contracts at issue.  These contracts were being performed by a
separate third party entity which had purchased them from Avaya.  The Comptroller took this

action despite the fact that no hearing had been held, or even offered, on the merits of the

underlying complaints.

34.     On May 7, 2004, Netexit formally notified the Comptroller that it filed for

bankruptcy protection on May 4, 2004.

35.     After approximately nine months of silence, aside from the filing of its

bankruptcy Proof of Claim, the Comptroller served the Notice and Petition upon Netexit, via

United States mail, on January 26, 2005. (On December 29, 2004, the Comptroller did file the

above-referenced Proof of Claim.)

36.     On February 3, 2005, Netexit contacted the Comptroller to advise it that it

believed its Notice and Petition violated the automatic stay in the above captioned bankruptcy,

while at the same time proposing alternatives other than additional litigation.  In an effort to

avoid further litigation and cost to the bankruptcy estate, Netexit offered to cooperate in the

Comptroller's investigation and to stipulate to a Rule 2004 examination.

37.     Netexit sent a letter to the Comptroller summarizing the conversation of the

previous day (the "February 4 Letter").  In the February 4 Letter, Netexit again advised the

Comptroller that it believed that the Notice and Petition constituted a violation of the automatic

stay, and indicated a willingness to make a Netexit representative and any relevant records

available pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, as an alternative

method to resolve the Comptroller's Claims.  A copy of the February 4 Letter is attached hereto

as Exhibit D.

**COUNT I: VIOLATION OF THE AUTOMATIC STAY**
**PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE**

38.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1-37 of

the Complaint as if fully set forth herein.

39.     On December 29, 2004, the Comptroller filed the Proof of Claim in the Debtors'
bankruptcy cases.

40.     By filing the Proof of Claim, the Comptroller has subjected itself and the City of
New York to the bankruptcy court's equitable jurisdiction.

41.     On January 26, 2005, the Comptroller filed the Petition alleging identical
violations of the New York State Labor Laws as set forth in the Proof of Claim.

42.     The Petition and the Proof of Claim both allege that Expanets n/k/a Netexit
willfully violated the New York State Labor Law by failing to pay Workers prevailing wages
and bona fide wage supplements.

43.     The Petition and the Proof of Claim are both brought by the Comptroller on
behalf of 16 former Netexit employees seeking additional pre-petition wages, penalties and
interest allegedly due under the Contract in the amount of $2,630,054.90 (including interest and
civil penalties as of January 25, 2005).

44.     The filing of the Petition constituted an act to obtain possession of or to exercise
control over the assets of Netexit, or alternatively, the commencement of a judicial,
administrative, or other action or proceeding against Netexit that could have been commenced
before the Petition Date, or to recover a claim against Netexit that arose before the Petition Date,
all in violation of the automatic stay under 11 U.S.C. § 362.

45.     The continuation of the prosecution of the Petition and the development of a
factual record: (i) will divert key people, including the present officers and directors, from the
Debtors' current efforts in formulating a liquidating plan; (ii) could result in adverse factual
findings by OATH that may be inconsistent with the Bankruptcy Code and which could impair
the final resolution of the Proof of Claim; (iii) will add unnecessary and duplicative expenses in

responding to the Petition; and (iv) will interfere with the Plaintiff's ability to successfully

formulate a chapter 11 plan of liquidation on a timely and cost-effective basis.

46.    The relief requested in the Petition is not excepted from the automatic stay

pursuant to the police power exception under 11 U.S.C. § 362(b)(4), in that it is not reasonably

designed or intended to promote the public health, safety and welfare of the City.

47.    Netexit is entitled to a declaration that the Comptroller violated the automatic stay

by filing the Petition and an award of actual damages in an amount to be determined, including

costs and attorney's fees, and punitive damages from the Comptroller for this willful violation of

the automatic stay.

**COUNT II: INJUNCTIVE RELIEF**
**<u>PURSUANT TO SECTION 105 AND 362 OF THE BANKRUPTCY CODE</u>**

48.    The Plaintiff repeats and realleges the allegations contained in Paragraphs 1-47 of

this complaint as more fully set forth herein.

49.    Pursuant to Section 105(a) of the Bankruptcy Code, a bankruptcy court may

"issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title." 11 U.S.C. § 105(a)(2000).

50.    To the extent that Section 362 of the Bankruptcy Code does not already stay the

Litigation, relief under Section 105 is necessary to carry out the provisions of Section 362 of the

Bankruptcy Code.

51.    Section 105 empowers a bankruptcy court to enjoin the Petition on a temporary

and permanent basis to protect the Debtors from irreparable harm.

52.    The Petition is brought by the Comptroller on behalf of 16 former Netexit

employees, who have each asserted individual proofs of claim in the Debtors' substantively

consolidated bankruptcy case, which are duplicative of the Comptroller's Claims.

10

53.     The Comptroller has also filed the Proof of Claim, invoking this Court's exclusive jurisdiction to resolve the Comptroller's Claims.

54.     The continuation of the prosecution of the Petition and the development of a factual record: (i) will divert key people, including the present officers and directors, from the Debtors' current efforts in formulating a liquidating plan; (ii) could result in adverse factual findings by OATH that may be inconsistent with the Bankruptcy Code and which could impair the final resolution of the Proof of Claim; (iii) will interfere with and possibly disrupt the ongoing settlement discussions with individuals asserting the same claims as the Comptroller; (vi) will add unnecessary and duplicative expenses in responding to the Petition; and (v) will interfere with the Plaintiff's ability to successfully formulate a chapter 11 plan of liquidation on a timely and cost-effective basis.

55.     The Plaintiff seeks a temporary restraining order and preliminary injunction to preserve the automatic stay until the Comptroller's claim can be adjudicated, consistent with the terms of the Bankruptcy Code, to: (i) protect and preserve the assets of the Debtors' substantively consolidated estate; (ii) avoid diversion of key people, including the present officers and directors, from the Debtors' current efforts in formulating a liquidating plan; and (iii) avoid material, factual and legal findings that could arguably collaterally estop the Plaintiff in the resolution of the Proof of Claim in this Court.

56.     As a result of the foregoing action, Netexit is being irreparably harmed and has suffered and will continue to suffer damages in an amount to be determined.

57.     Good cause exists for the issuance of an immediate temporary restraining order and preliminary injunction staying the Petition until further order of this Court.

[CONCLUDED ON NEXT PAGE]

11

WHEREFORE, Plaintiff prays for judgment:

(a)    issuing an immediate temporary restraining order declaring that continued prosecution of the Petition by the Defendant as against Netexit is stayed under Section 362 of the Bankruptcy Code;

(b)    issuing a preliminary injunction enjoining and precluding the Defendant from any further prosecution of the Petition against Netexit; and

(c)    pending final judgment in this adversary proceeding, prohibiting the Defendant from any further prosecution of the Petition against Netexit; and

(d)    awarding the Plaintiff all damages sustained as found by the Court in consequence of the Comptroller's unlawful activity and violation of the automatic stay, including, without limitation, reasonable attorney's fees; and

(e)    awarding the Plaintiff such exemplary damages as the Court finds appropriate; and

(f)    awarding the Plaintiff such other and further relief as the Court may deem just and proper.

Dated:  Wilmington, Delaware
        February 9, 2005

Respectfully submitted,


David L. Finger_____
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE  19801-1155
(302) 884-6766

Jesse H. Austin, III
Karol K. Denniston
Paul, Hastings, Janofsky & Walker, LLP
Suite 2400
Atlanta, GA 30309
Jesse H. Austin, III
Karol K. Denniston
Telephone: (404) 815-2400

Attorneys for plaintiff Netexit, Inc.