# LEONARD, STREET AND DEINARD

PROFESSIONAL ASSOCIATION

January 9, 2004

DOMINIC J. CECERE
612-335-7005
dominic.cecere@leonard.com

RICHARD W. PINS
612-335-7007
richard.pins@leonard.com

*VIA FACSIMILE AND REGULAR MAIL*

Mr. Duane Gibson
New York City Comptroller's Office
One Centre Street
New York, NY 10007

Re:   Expanets, Inc. – Prevailing Wage Issues

Dear Mr. Gibson:

The following is an overview of the work which was performed by Expanets, Inc.'s employees on projects covered by contracts with the City of New York and a summary analysis of the appropriate prevailing wage rate to be applied to such work. We appreciate the opportunity to summarize the employer's viewpoint, and believe that this summary will aid in your analysis of the appropriate wage rate and statute of limitations.

**The Prevailing Wage**

It is our understanding that one or more of the individuals who performed work covered by Expanets' various contracts with the City of New York may have suggested to you that their job at Expanets involved "low voltage cabling carrying voice, data, video or any combination thereof," also known as "pulling cable." If, however, these employees suggested that a majority of their work on covered projects involved them pulling cable, they were providing a less-than-complete picture.

While it is true that some of the covered employees did, from time to time, pull cable, many of the covered employees did not pull cable at all. Moreover, those that did pull cable did so for less than a majority of the time they were working on covered projects. Rather, the majority of their time on covered projects was spent working on frames, working on the phones themselves, laying phones out and putting in trays, work traditionally associated with installation.

The actual electrical work on the subject projects was often done in advance of Expanets' arrival on a job by either, City electricians, or other contractors who were brought in specifically to pull cable. In reality, many of the employees covered by Expanets' contracts with the City did not

150 SOUTH FIFTH STREET   SUITE 2300   MINNEAPOLIS, MINNESOTA 55402   TEL 612-335-1500   FAX 612-335-1657

LAW OFFICES IN MINNEAPOLIS, SAINT PAUL, MANKATO, SAINT CLOUD AND WASHINGTON, D.C.

WWW.LEONARD.COM

Mr. Duane Gibson
Page 2
January 9, 2004

work at all on low voltage cabling. Those who did work on low voltage cabling spent more time installing telephones than they did pulling cable.

Given the above, the City attached the Prevailing Wage Schedule for Telecommunications Workers, as opposed to the Schedule for Electricians, to several of the specifications it sent to Expanets along with the requests for proposals for the subject projects. The City's inclusion of these schedules illustrates its viewpoint on the type of work for which it was contracting Expanets.

It appears there are three possible classifications into which the subject employees might be placed, "Telecommunications Worker," "Electrician 'A'" and "Electrician 'M'." Our investigation has revealed that most of the employees spent a majority of their time on covered projects doing work which fits squarely within the "Telecommunications Worker" classification. While it is likely true that some employees spent a portion of their work day doing work which could be viewed as "Electrician" work, it appears a majority of that work would more correctly be classified as "Electrician M" as opposed to "Electrician A" work. Consequently, in the event the parties are unable to reach a mutually-acceptable resolution of this matter, Expanets respectfully requests an opportunity to present evidence and sworn testimony to prove its position with respect to the appropriate wage rate to apply to the work actually performed during the time in question. *See Passucci General Construction v. Hudacs*, 221 A.D. 2d 987 (4th Dept. 1995).

**The "Look Back"**

Based upon the express language of the statute, as well as an examination of the relevant legislative history, it is clear that the time period for which past wage underpayments may be recovered is two years.

Prior to 1998, the statute of limitations for filing a complaint regarding a violation of the prevailing wage requirement of the New York Labor Law was three years. On February 24, 1997, Senator Spano introduced Senate Bill 2821, which reduced the time for filing a complaint from three to two years. Although S.B. 2821 was later amended, the version of the bill that was signed into law by Governor Pataki on August 6, 1998 maintained the reduction in the time allowed to file a complaint. Specifically, both versions of the bill substituted "two year" for "three year" in Labor Law § 220-b (2)(a)(1), reducing the statute of limitations for filing a complaint with the Comptroller's office from three to two years.

In 1997, the Office of the Comptroller drafted a Memorandum in Support of the bill. In its Memorandum (attached), the Comptroller's office summarized the bill in part by stating that the bill "would shorten the time period for which past wage underpayments may be *recovered* from three to two years, so that contractors may now be held liable for violations no longer than two years before the filing of a complaint." According to the Comptroller's memo, "[t]he bill

Mr. Duane Gibson
Page 3
January 9, 2004

reduces from three to two years the time period prior to the filing of a prevailing wage complaint *for which back wages may be recovered.*"

In addition to the Comptroller's letter, there are other documents in the relevant bill file which indicate that the 1998 revision was intended to limit the look back period from three to two years. Among them are the Senate's Budget Report on the bill, which explains that it "Amend[s] the look back period from three years to two years within which an employee may be due back wages," and the Governor's Memorandum approving the bill, which states, among other things, that the law is "amended to change the time period in which a complaint must be filed from three years to two years after the labor was performed." Both of these documents are attached.

The intent of this letter is simply to provide your office with a more complete overview of the dispute at issue. Please let us know if you need any additional information or if you have any questions regarding the above or the attached.

Thank you for your time and consideration.

LEONARD, STREET AND DEINARD
*Professional Association*

Dominic J. Cecere
612-335-7005

Richard J. Pins
612-335-7007

RWP:clp:2435257

Enclosures

c:   Jeffrey Brown (w/encs.) (via facsimile and mail)
     Robert Valli (w/encs.) (via facsimile and mail)

STATE OF NEW YORK
EXECUTIVE CHAMBER
ALBANY 12224

AUG 5 1996

MEMORANDUM filed with Senate Bill Number 2821-A, entitled:

"AN ACT to amend the labor law, in relation to authorizing the department of labor and the New York city comptroller's office to recover prevailing wage underpayments from successors, subsidiaries, principals and other entities related to public works building service contractors who have violated the prevailing wage law, and to debar such entities from bidding on public contracts under certain circumstances"

CHAPTER 547
APPROVAL #86

APPROVED

This bill will amend various sections of Article 8 (Public Work) and Article 9 (Building Service) of the Labor Law to strengthen the means of recouping prevailing wage underpayments. Specifically, the bill amends section 220(5) of the Labor Law to define the term "substantially owned-affiliated entity" as a parent company of the contractor or subcontractor, any subsidiary of the contractor or subcontractor, or any entity in which the parent of the contractor or subcontractor owns more than 50% of the voting stock, or an entity in which one or more of the top five shareholders or subcontractor individually or collectively also owns a controlling share of the voting stock, or an entity which exhibits any other indicia of control over the contractor or over which the contractor or subcontractor exhibits control, regardless of whether the controlling party or parties have any identifiable or documented ownership interest. The section further defines the terms "entity," "parent company," "subsidiary" and "successor." Section 220-b(2)(a) of the Labor Law is amended to change the time period in which a complaint must be filed from three years to two years after the labor was performed. Further amendment provides for the issuance of a notice of withholding if there are insufficient monies due or earned to the contractor or subcontractor to satisfy wages and supplements alleged to be owed. Section 220-b(2)(d) of the Labor Law is amended to require the Department of Labor to consider the previous violations of an entity when assessing penalties. Section 220-b(3)(a) of the Labor Law is amended to allow an employee to sue a substantially-owned affiliated entity. Section 220-b(3)(b) of the Labor Law is amended to provide for the debarment of such entities for a period of five years when two final determinations have been rendered in a six year period. The bill takes effect sixty days after having been signed into law.

Currently, the Labor Law does not explicitly enable the State to pursue anyone other than the individual or company found to violate the prevailing wage statute. As a result, unscrupulous contractors can avoid compensating workers for underpayments by bankrupting one corporate entity and creating another. This newly created corporation can then obtain other public works contracts while the workers from the previous corporate entity attempting to collect their wages are relegated to the position of last-in-line creditors in bankruptcy proceedings.

It was never the intent of our State's prevailing wage law to permit loopholes whereby corporate form and formalities can be used to avoid making restitution to employees. The bill closes these apparent loopholes by allowing the New York City Comptroller and the New York State Department of Labor to withhold payments from violators and any substantially-owned affiliated entity formed for the purpose of entering into public works contracts and avoiding the obligation to pay workers the prevailing wage. In addition, the bill explicitly permits the State or the City to pursue the personal assets of the top shareholders of such a corporation. It is my sincere hope that vigorous enforcement utilizing the tools contained in this bill will, once and for all, put a stop to these unscrupulous methods of avoiding responsibility for violations of our State's prevailing wage law.

Opponents of the bill have expressed concern regarding the breadth of the definition of substantially-owned affiliated entity. I share their concern with respect to those parties where there is no "identifiable or documented ownership interest." I have received assurances from both the State Department of Labor and the New York City Comptroller's office that the intent of this provision is simply to ensure that the most nefarious violators do not choose a method of circumventing the law not yet contemplated to continue to engage in the activity sought to be proscribed by the bill.

I remain concerned, however, that such an open-ended definition could be used in an inappropriate manner resulting in legal actions against contractors not because of any unlawful activity but because of their financial means and ability to pay deserving workers. I commend the proponents of the bill for recognizing my concerns and pledging their support for a chapter amendment in the upcoming legislative session to sunset this legislation on December 31, 2000. Such a sunset will provide an opportunity to determine whether the bill achieves its stated intent without any unwelcome impact on our State's law-abiding contractors.

The bill is approved.



K.R-

C.547

B-201  **BUDGET REPORT ON BILLS**  Session Year 1998

**SENATE
No. 2821--A**

Introduced by:
Senator Spano, Assemblywomen Nolan, John, Katz,
Mayersohn, Assemblymen Gromack, Klein, Colman,
Ortiz

Law: Labor                                              Sections: 220, 220-b, 230, 235

**Division of the Budget recommendation on the above bill:**

Approve: _____   Veto:  X   No Objection: _____   No Recommendation: _____

1. <u>Subject and Purpose</u>:

   To provide the Department of Labor (DOL) and the New York City Comptroller's office with broad authority to seize payments from affiliated entities of contractors or subcontractors to recover prevailing wage underpayments.

2. <u>Summary of Provisions</u>:

   Effective 60 days after enactment, the bill would amend the Labor Law regarding the collection of unpaid wages on public work projects as detailed below.

   - Authorize DOL or the New York City's Comptroller's office, in cases where payment withholdings from the contractor or subcontractor are insufficient to satisfy unpaid wages and/or supplements, to withhold payments for such unpaid wages, as well as interest and civil penalties allowed under the Labor Law from:

     -- the parent company of the contractor or subcontractor;

     -- entities in which the parent company owns a majority of the stock or other entities in which the parent company exhibits control;

     -- any successor entity engaged in similar work as the contractor or subcontractor;

     -- any entity controlled directly or indirectly by the contractor, subcontractor or their parent company;

     -- any partners of the contractor or subcontractor or any of its five largest shareholders; or

     -- any officer of the contractor who knowingly participated in the underpayment of wages and/or supplements.

   - Allow parties notified of payment withholdings against them to contest such action on the basis that they are not an affiliated entity (as detailed above) of the contractor or

000006

2

subcontractor.

- Authorize DOL or the New York City Comptroller's office to file a copy of any order for payment against affiliated entities of the contractor or subcontractor with the office of the county clerk in those cases where such entities have failed to make payments in response to such orders. Provide that the filing of the orders would have the same force and effect as a docketed judgement and may be enforced in the same manner.

- In cases in which a final determination has been made against a subcontractor, and in which the contractor already has made payments to satisfy unpaid wages, interest and any civil penalties assessed, authorize the contractor to file an order against a subcontractor with the county clerk to recover monies paid by the contractor.

- Amend provisions of the Labor Law, relating to the collection of unpaid wages and associated enforcement provisions, to include affiliated entities of contractors and subcontractors.

- Amend the look back period from three years to two years within which an employee may be due back wages.

3. <u>Legislative History</u>:

A similar bill was introduced in 1997 but did not pass.

4. <u>Statement in Support</u>:

The Labor Law requires that all contractors on public work projects pay their employees according to prevailing wage schedules established by the Department of Labor for various occupations. This requirement ensures that employees on public work projects who are not represented by a labor union receive wages consistent with those negotiated through the collective bargaining process.

Authorizing DOL and the New York City Comptroller's office to seek recovery of unpaid wages by withholding payments from affiliated entities of contractors and subcontractors will increase the chances for recovery of such wages, especially in those cases where the work has been completed and all payments have been made to the contractor or subcontractor. However, affiliated entities of contractors and subcontractors may not have any involvement with wage underpayments made by those contractors. In addition, the bill may be unnecessary given recently enacted legislation to combat wage underpayments.

5. <u>Arguments in Opposition</u>:

The authority granted by the bill to recover wage underpayments from affiliated entities of contractors or subcontractors is too broad in its scope and would penalize innocent business operations. Affiliated entities may not be involved in public work projects undertaken by contractors or subcontractors with whom the entities have a financial interest. Under this bill, the powers granted to the government are excessive as affiliated entities could be penalized for actions which they may not control. Such sweeping enforcement authority may discourage businesses from locating in New York and potentially harm the state's economic

000007

3

competitiveness.

At a minimum, any proposal for increased enforcement authority regarding the prevailing wage law should be accompanied by reforms which help those businesses that obey the law. In addition, affiliated entities should only be penalized if the government can prove that such entities acted in collusion as part of a plan to underpay wages.

Given recently enacted legislation to strengthen prevailing wage enforcement, the bill is premature and may also be unnecessary. Before enacting additional enforcement tools, the government should give these recent laws an opportunity to work. For example, in 1997 the Labor Law was amended to require contractors and subcontractors on public work projects to submit a transcript of payroll records every thirty days during the project to the government agency that prepared the project plans. This law gives the government early identification of prevailing wage problems and allows for the correction of problems before the project work is completed and final payments are made to the contractor. In addition, Chapter 511 of the laws of 1995 created the public work enforcement fund to support additional Department of Labor staff to investigate prevailing wage law violations and complaints. The fund is supported by transfers from state agencies of a small portion of the value of their construction and rehabilitation contracts.

6.  Other State Agencies Interested:

    The Department of Labor supports the bill.

7.  Other Interested Groups:

    None known.

8.  Budget Implications:

    The bill would have a minor impact on state finances because it requires that any penalties collected from affiliated entities of contractors or subcontractors by DOL be deposited in the State treasury.

9.  Recommendation: Veto.

    The bill would provide excessively broad enforcement powers to the government that could penalize innocent business operations. In addition, it does not offer any reforms for businesses that obey the law and may be unnecessary in light of recently enacted legislation, therefore, we recommend veto.

000005

Allison M. Walsh          TEL:212-669-3192          Jul 31 98   16:32 No.005 P.04



Jane Levine
DEPUTY COMPTROLLER FOR
LEGAL AFFAIRS/GENERAL COUNSEL
Phone (212) 669-7770
FAX  (212) 669-8154

THE CITY OF NEW YORK
OFFICE OF THE COMPTROLLER
1 CENTRE STREET
NEW YORK, N.Y. 10007-2341

ALAN G. HEVESI
COMPTROLLER

Regina M. Calcaterra
DIRECTOR
INTERGOVERNMENTAL RELATIONS
Phone (212) 669-3080
FAX  (212) 669-3409

## MEMORANDUM IN SUPPORT
## 1997 LEGISLATIVE SESSION

A. 4798/Assemblymember Nolan
S. 2821/Senator Spano

**TITLE:**

AN ACT to amend the prevailing wage law to allow the New York State Department of Labor and the New York City Comptroller's Office to recover prevailing wage underpayments from and debar successors, subsidiaries, principals and other entities related to public works and building services contractors who have violated the prevailing wage law.

*************************************************************

**SUMMARY OF PROVISIONS:**

This bill would amend Sections 220-b and Sections 230 et seq. of the labor law to enhance the City's and the State's ability to enforce the prevailing wage law and to recover prevailing wage underpayments owed to workers. By allowing the State and City to withhold moneys from the top shareholders and entities controlling or controlled by contractors who have violated the prevailing wage laws, the bill would at once remedy and discourage labor law violations. By allowing for the debarment of such entities and shareholders from bidding on government contracts, the bill also would discourage violations. The bill also would discourage violations by allowing prime contractors who have made restitution to employees of their subcontractors found liable for prevailing wage violations to recover from the subcontractors without commencing separate litigation. It also would shorten the time period for which past wage underpayments may be recovered from three to two years, so that contractors may now be held liable for violations no longer than two years before the filing of a complaint.

**REASONS FOR SUPPORT:**

This legislation will strengthen the prevailing wage laws to facilitate public entities' enforcement of the laws and prime

000024

contractors' ability to recoup wage underpayments of their subcontractors, most importantly, ensure that workers are paid prevailing wages, by clarifying the withholding and debarment provisions of the Labor Law.

The Labor Law does not specifically enable the State Department of Labor or the New York City Comptroller, who are charged with enforcing the prevailing wage law, to withhold moneys from any entity other than the individual or company found to be in violation. Consequently, contractors frequently avoid making restitution of underpayments by bankrupting one corporate entity and creating another, which subsequently obtains other public works contracts. In this way contractors are able to evade their obligations under the law and continue doing business with government entities by simply doing business under another name. This undermines the original intent of the legislature to prevent contractors who underpay their workers from obtaining government funds and to ensure that workers receive fair wages on government projects.

The legislature did not intend that corporate form and formalities would be a loophole through which contractors could avoid their debts to employees; rather, the remedial purposes of the statute will be better effectuated if government entities are clearly empowered to withhold payments from "shadow" or "alter ego" entities established for the purpose of sidestepping the prevailing wage law. If a fiscal officer has reason to know that an entity to which it pays money pursuant to a public works or building services contract has an otherwise unsatisfied obligation under the prevailing wage law to make restitution to its workers, the fiscal officer should be empowered to withhold such payment to wrongdoers who are unscrupulous enough to operate under different names on different government contracts. Furthermore, these entities should not be rewarded with future government work.

The bill would close this loophole by allowing the fiscal officer to withhold payments from and enforce orders against the personal assets of the contractor's top shareholders and against an entity it believes has been formed by the same principals as a way of contracting with government entities but avoiding their obligations to pay workers. Another increasing problem is contractors who become bankrupt while they still owe back pay to workers; the workers then become last-in-line creditors in bankruptcy proceedings and, as a practical matter, cannot recover the wages they are owed. This problem would also be remedied by the legislation's provision for recovery against top shareholders of the corporation, who are already liable for payroll liabilities pursuant to the Business Corporation Law. By enabling the fiscal officer to file and enforce its order as if it were a judgment, the amended Labor Law would facilitate recovery by workers, many of whom are not represented by counsel and may not understand their rights under the law. Additionally, the bill would permit related entities to be debarred for each other's willful violations of the Labor Law.

The bill contains provisions allowing the successor, shareholder or other related entity to contest the withholding of payments and the filing of orders of the fiscal officer with the

2

000025

Allison M. Walsh        TEL:212-669-3192              Jul 31 98    16:33 No.005 P.06

county clerk of the entity's residence. In this way the bill contains safeguards against the possibility of the fiscal officer ordering withholding or enforcing an order against an entity which should not, as a matter of equity and fairness, be held responsible for the actions of the Labor Law violator.

This bill also entitles a prime contractor that has made restitution to the workers of its subcontractors determined to have underpaid its employees to file and enforce that determination against the subcontractor as a judgment. This provision will protect court resources and make it harder for violators to avoid their responsibility for prevailing wages.

The bill reduces from three to two years the time period prior to the filing of a prevailing wage complaint for which back wages may be recovered. At present such a recovery may cover a period beginning three years prior to the date a complaint is filed. This provision will simplify the enforcement process with little or no adverse impact on employees seeking to assert claims.

Finally, the bill contains certain provisions that are intended to rectify certain discrepancies between §§220 et seq. and §§230 et seq.

Accordingly, it is urged that this bill be enacted.

Sincerely,

Jane Levine
General Counsel

Regina M. Calcaterra
Director,
Intergovernmental Relations

3

000026