IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: : | Chapter 11 |
| NETEXIT, INC., *et al.,* : | Case No. 04-11321 (JLP) |
| Debtors. : | (Jointly Administered) |
| NETEXIT, INC., : | Adversary Proceeding |
| : | No. 05-_____ |
| Plaintiff, : | |
| v. : | |
| THE COMPTROLLER OF THE CITY : | |
| OF NEW YORK, : | |
| Defendant. : | |

**DEBTOR'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION STAYING PETITION BEFORE OFFICE
<u>OF ADMINISTRATIVE TRIALS AND HEARINGS</u>**

Netexit, Inc. ("Netexit" or the "Debtor")[1], the plaintiff (the "Plaintiff") in the above-captioned adversary proceeding, hereby moves this Court for the immediate entry on an emergency basis of a temporary restraining order and preliminary injunction pursuant to §§ 105 and 362 of Title 11 of the United States Code (the "Bankruptcy Code") staying a petition before the Office of Administrative Trials and Hearings

---

[1] In addition to Netexit, Inc., the jointly administered and substantively consolidated debtors consist of the following entities: Eagle a Netexit Company Inc., Netexit of California, Inc., Netexit of California Construction, Inc., Netexit of Hawaii, Inc., Netexit of Indiana, Inc., Netexit of Indiana, LLC, Netexit of Mississippi, Inc., Netexit of New York, Inc., Netexit of Oklahoma, Inc., Netexit of Pacific Northwest, Inc., Netexit of Tennessee, Inc., Netexit of North America LLC, and ATS Financial Services, Inc. (collectively, the "Debtors").

identified in the Debtor's Verified Complaint for Declaratory, Temporary and Permanent Injunctive Relief, against The Comptroller of the City of New York (the "Comptroller"). In support of this motion (the "Motion"), Netexit respectfully represents as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Chapter 11 cases and this Motion are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

**A.    Commencement of the Chapter 11 Cases**

2. On May 4, 2004, each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors are debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code and no trustee has been appointed in these proceedings. On June 8, 2004, the official committee of unsecured creditors (the "Committee") was appointed by the Office of the United States Trustee.

**B.    Background of the Debtors**

3. The Debtors are no longer operating businesses. Pursuant to a transaction that closed on November 25, 2003, the Debtors sold substantially all of their assets to Avaya, Inc. ("Avaya"). Netexit, Inc., formerly known as Expanets, Inc. ("Expanets"), was a nationwide provider of networked communications and data services and solutions to small to mid-sized businesses. Expanets, itself and through its subsidiaries, offered services including voice and data networking, internet connectivity messaging systems,

advanced call processing applications, computer telephony, networking management and carrier services.

4.  NorthWestern Corporation ("NOR"), through a direct subsidiary, currently controls 99% of the voting interests of Expanets n/k/a Netexit. NOR is a publicly traded Delaware corporation which was incorporated in 1923. NOR and its direct and indirect subsidiaries provide electricity and natural gas in the Upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska. The acquisition of Expanets and several non-utility subsidiary entities was an attempt by NOR to diversify.

C.  **Circumstances Surrounding the Filings**

5.  NOR incurred a significant amount of debt to finance a number of acquisitions by Expanets, as well as provide it with working capital. NOR's significant investments in Expanets and in other non-utility businesses resulted in a severe financial drain on NOR, particularly when Expanets, as well as other investments, failed to perform as expected.

6.  Eventually, NOR determined to restructure itself, and on September 14, 2003 filed for protection under Chapter 11 of the Bankruptcy Code. On October 19, 2004, the Court entered an order confirming NOR's Second Amended and Restated Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan of Reorganization"). On November 1, 2004, the Effective Date under the Plan of Reorganization occurred and NOR emerged from Chapter 11.

7. As a result of the sale of substantially all of the assets of Expanets to Avaya, Netexit and its subsidiaries were left with certain liabilities and the proceeds of the asset sale, but without the going-concern business necessary to generate ongoing revenues. The Debtors are no longer operating and have no employees. The Debtors have sought relief under Chapter 11 of the Bankruptcy Code in order to obtain a moratorium on their liabilities and various litigation, and to efficiently and economically resolve claims against their estates and equitably distribute the Debtors' assets.

8. On July 12, 2004, Netexit and its subsidiary debtors filed their Motion for an Order Substantively Consolidating the Estates of Netexit, Inc. and Its Subsidiary Debtors (Docket Entry 98). On September 15, 2004, this Court entered the Order Granting Substantive Consolidation of the Estates of Netexit, Inc. and its Subsidiary Debtors (Docket Entry 182).

**D.   The Notice of Hearing Before the Office of Administrative Trials and Hearings**

9. On January 26, 2005, the Comptroller filed a Notice of Hearing (the "Notice") and Petition (the "Petition"), LL Case No. 20021215, before the Office of Administrative Trials and Hearings ("OATH"), alleging violations of the New York State Labor Laws. A copy of the Notice and Petition is attached as <u>Exhibit B</u> to the complaint commencing the above-captioned adversary proceeding (the "Complaint").

10. The Petition alleges that: (i) Expanets (now Netexit) performed work on City of New York, Human Resources Administration contract Number: 20020001339 (the "Contract"), providing telecommunications maintenance and support services at various locations throughout the City of New York; and (ii) Expanets willfully violated

the New York State Labor Law by failing to pay Workers[2] prevailing wages and bona fide wage supplements and failed to produce any original books and records relating to the wages paid and supplements provided by Expanets to the Workers (collectively, the "Comptroller's Claims").

11.     The Petition seeks findings by OATH against Netexit: (i) that Netexit willfully violated § 220(3) of the New York State Labor Law by failing to pay prevailing wages and bona fide wage supplements to the Workers on the Contract as calculated on the Summary of Underpayment attached to the Petition; (ii) that as a consequence of the violation of the Contract, Netexit be placed on probation for a period of five years, pursuant to § 220-b(3)(b) of the New York State Labor Law; (iii) be assessed interest at the statutory rate of sixteen percent (16%) per annum from the date of each underpayment; and (iv) be assessed a twenty-five percent (25%) civil penalty.

12.     The Petition seeks a "Total Violation" of $2,630,054.90 (including interest and civil penalties as of January 25, 2005).

13.     Pursuant to the Notice, a hearing has been set before OATH on the Petition for March 21-22, 2005. Netexit's answer to the Petition (the "Answer") is due on or before Wednesday, February 9, 2005.

---

[2]     Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Petition.

**E.      The Comptroller of the City of New York's Proof of Claim**

14.    On December 29, 2004, the Comptroller filed a proof of claim (the "Proof of Claim") in the Debtors' bankruptcy cases, alleging the identical claims as set forth in the Petition. A copy of the Proof of Claim is attached as <u>Exhibit A</u> to the Complaint.[3]

**F.      Netexit's Attempts to Resolve the Dispute with the Comptroller**

15.    On or about January 30, 2003, the Comptroller notified Netexit, then known as Expanets, that an employee had filed a claim regarding the payment/non-payment of prevailing wages. The claim underlying this notice was filed in December of 2002.

16.    In response to the notice, Netexit advised the Comptroller that it was willing to cooperate with any investigation.

17.    Despite this response, Netexit heard nothing from the Comptroller until early December of 2003, when, along with private counsel for several prevailing wage claimants, Netexit initiated contact with the Comptroller to discuss the status of claims that had been filed with the Comptroller. During this call, the Comptroller requested from Netexit copies of job specifications for the work at issue. On December 9, 2003,

---

[3]   Additionally, all of the Workers listed in the Petition have filed individual proofs of claim against the Debtors' estates for the same claims asserted by the Comptroller in the Proof of Claim. See claims of: (i) Felix Adams (Claim Number 199, filed 10/29/04); (ii) Wayne R. Belnavis (Claim Number 201, filed 10/29/04); (iii) Luidgy Casimir (Claim Number 204, filed 10/29/04); (iv) David Daniels (Claim Number 211, filed 11/1/04); (v) Jose Fernandez (Claim Number 203, filed 10/29/04); (vi) Victor Ibarra (Claim Number 193, filed 10/29/04); (vii) Secudino Lebron (Claim Number 194, filed 10/29/04); (viii) Euginio Magan (Claim Number 206, filed 10/29/04); (ix) Oliver May (Claim Number 205, filed 10/29/04); (x) Walter McLeod (Claim Number 198, filed 10/29/04); (xi) Roger Mike (Claim Number 210, filed 11/01/04); (xii) Santos Paredes (Claim Number 197, filed 10/29/04); (xiii) Rubin Rivera (Claim Number 196, filed 10/29/04); (xiv) Robert Suero (Claim Number 191, filed 10/29/04); (xv) Luis Taveras (Claim Number 235, filed 10/29/04); and (xvi) James Winston (Claim Number 202, filed 10/29/04).

Netexit complied with the Comptroller's request, and extended an offer to further assist with the Comptroller's analysis.

18.   On January 9, 2004, Netexit sent a letter to the Comptroller (the "January 9 Letter"), providing an overview of the work which was performed by its employees on the projects covered by the Contract, discussing issues relating to the underlying claims, and introducing certain defenses to those claims.  A copy of the January 9 Letter is attached as <u>Exhibit C</u> to the Complaint.  In this same letter, Netexit again expressed a willingness to work with the Comptroller.

19.   Subsequently, on or about January 20, 2004, Netexit received from the Comptroller a Notice to Produce and Examination, dated January 12, 2004.   In this Notice, the Comptroller directed Netexit to appear with and testify regarding certain documents identified in the Notice.  When it received this Notice, Netexit had already sold its assets, including the Amityville, New York facility which is the subject of the inquiry at issue, to Avaya.

20.   Following a request by Netexit, the Comptroller rescheduled the production and examination for March 18, 2004.

21.   On March 18, 2004, Netexit appeared, by and through counsel, at the Comptroller's New York City office.

22.   On this same date, the Comptroller advised Netexit that five individuals had filed claims, and provided Netexit with copies of these claims.

23.   Also on this date, Netexit explained that it was engaged in efforts to resolve disputes regarding the prevailing wages with the complainants, through their

counsel. After extensive discussions, it was agreed during this meeting that the private parties would continue settlement efforts, and that, if those efforts did not result in a settlement, Netexit would advise the Comptroller of that fact, and the Comptroller would send a revised Notice to Produce and Examination, setting forth a new date to appear.

24. Before Netexit ever had a chance to contact the Comptroller, and while negotiations with the claimants' private counsel were ongoing, the Comptroller began withholding money under the contracts at issue. These contracts were being performed by a separate third party entity which had purchased them from Avaya. The Comptroller took this action despite the fact that no hearing had been held, or even offered, on the merits of the underlying complaints.

25. On May 7, 2004, Netexit formally notified the Comptroller that it filed for bankruptcy protection on May 4, 2004.

26. After approximately nine months of silence, aside from the filing of its bankruptcy Proof of Claim, the Comptroller served the Notice and Petition upon Netexit, via United States mail, on January 26, 2005. (On December 29, 2004, the Comptroller did file the above-referenced Proof of Claim.)

27. On February 3, 2005, Netexit contacted the Comptroller to advise it that it believed its Notice and Petition violated the automatic stay in the above captioned bankruptcy, while at the same time proposing alternatives other than additional litigation. In an effort to avoid further litigation and cost to the bankruptcy estate, Netexit offered to cooperate in the Comptroller's investigation and to stipulate to a Rule 2004 examination.

28. Netexit sent a letter to the Comptroller summarizing the conversation of the previous day (the "February 4 Letter"). In the February 4 Letter, Netexit again advised the Comptroller that it believed that the Notice and Petition constituted a violation of the automatic stay, and indicated a willingness to make a Netexit representative and any relevant records available pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, as an alternative method to resolve the Comptroller's Claims. A copy of the February 4 Letter is attached as <u>Exhibit D</u> to the Complaint.

## RELIEF REQUESTED AND BASIS FOR RELIEF THEREFOR

29. By this Motion, Netexit requests the immediate entry of a temporary restraining order on an emergency basis staying the prosecution of the Petition, pending a hearing on Netexit's motion for a preliminary injunction.

30. Netexit seeks an order, pursuant to Sections 105(a) and 362 of the Bankruptcy Code, staying the continued prosecution of the Petition in favor of the claims resolution process in these cases, as initiated by the Comptroller's filing of the Proof of Claim.

31. A temporary restraining order and a preliminary injunction are necessary and appropriate because the continued prosecution of the Petition will force Netexit to litigate the Comptroller's Claims in two separate fora, potentially resulting in completely inconsistent results, while burdening the Debtors' substantively consolidated estate with additional and unnecessary expenses. In addition, Netexit is participating in continuing and ongoing settlement discussions with the individuals who have filed claims addressing the same facts and circumstances as addressed by the Comptroller in the Petition.

32. As set forth in the Petition, the Comptroller is seeking to recover sixteen percent interest and an additional twenty-five percent penalty on its alleged claims. The interest and penalties being sought are inconsistent with the provisions of Bankruptcy Code, and if allowed will dissipate the assets available for Netexit's other creditors.

33. The legal basis for the relief requested herein is set forth in the Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction Staying a Petition before the Office of Administrative Trials and Hearings (the "Memorandum") filed contemporaneously herewith.

34. A temporary restraining order is critically important as the Comptroller continues to aggressively pursue Netexit, all the while knowing that: (i) it has filed a Proof of Claim in these proceedings; (ii) its claims are strongly disputed, contingent and unliquidated; (iii) that Netexit is no longer an operating business; (iv) that all information and discovery is being preserved and maintained by Netexit as part of Netexit's duties and obligations as a debtor and debtor-in-possession; and (v) the pursuit of multiple actions on the same facts and circumstances is unnecessarily depleting Netexit's bankruptcy estate.

35. The continuation of the prosecution of the Petition and the development of a factual record: (i) will divert key people, including the present officers and directors, from the Debtors' current efforts in formulating a liquidating plan; (ii) could result in adverse factual findings by OATH that may be inconsistent with the Bankruptcy Code and which could impair the final resolution of the Proof of Claim; (iii) will add unnecessary and duplicative expenses in responding to the Petition; (iv) will interfere

with and possibly disrupt the ongoing settlement discussions with individuals asserting the same set of facts and circumstances as the Comptroller; and (v) will interfere with the Plaintiff's ability to successfully formulate a chapter 11 plan of liquidation on a timely and cost-effective basis.

36. The stay requested by Netexit similarly limits any harm that may be incurred by the Comptroller. The Comptroller's Claims are preserved by the Proof of Claim filed in these cases. The Comptroller has not set forth any reason why the Comptroller's Claims need to be liquidated immediately. Indeed, the Comptroller's delay in pursuing the Comptroller's Claims, as set forth in paragraphs 14 through 26 of this Motion, belies any claim of urgency. The Plaintiff believes that, under the protection of this Court, it will be able to successfully resolve all claims, including the Proof of Claim, and formulate a Chapter 11 plan of liquidation that is fair to all creditors. Therefore, the public interest will be served by allowing the Plaintiff to focus on its reorganization efforts during this critical stage of its bankruptcy proceeding.

37. As the continuation of the prosecution of the Petition will cause irreparable harm to the Plaintiff, the Plaintiff requests that the Comptroller be immediately restrained and enjoined from the continued prosecution of the Petition between the date of filing the Complaint and the date this Court rules on the Plaintiff's motion for preliminary injunction.

38. The Plaintiff seeks a temporary restraining order and preliminary injunction to (i) protect and preserve the assets of the estate; (ii) focus on reorganization

efforts; and (iii) avoid material, factual and legal findings that could arguably collaterally estop the Plaintiff in the resolution of the Proof of Claim in this Court.

39.     Therefore, good cause exists for the issuance of an immediate temporary restraining order and preliminary injunction staying the prosecution of the Petition.

40.     The Plaintiff also requests that this Court retain jurisdiction to hear and determine all matters arising from or related to this Motion.

## NOTICE

41.     Notice of this Motion has been given to (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) the Internal Revenue Service; (iv) the U.S. Department of Justice; (v) the U.S. Department of Labor; (vi) the Pension Benefit Guaranty Corporation; (vii) the Virginia Department of Taxation; (viii) the Connecticut Department of Revenue Services; (ix) the State of Missouri Department of Taxation; and (x) the New York State Department of Taxation; (xi) the Navajo Nation Department of Taxation; (xii) Avaya, Inc.; (xiii) The Comptroller for the City of New York; (xiv) all parties that have filed requests for notice pursuant to Bankruptcy Rule 2002 in these cases and in NOR's bankruptcy case.

42.     Notice of this Motion and all related pleadings have been served upon The Comptroller for the City of New York, via hand delivery and facsimile, on February 9, 2005.

43.     The Plaintiff respectfully submits that such notice is sufficient, and requests that this Court find that no further notice of the relief requested herein is required.

44. No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that the Court enter an order, substantially in the form annexed hereto, granting: (i) a temporary restraining order effective immediately staying the prosecution of the Petition; (ii) a preliminary injunction enjoining and prohibiting the continued prosecution of the Petition; and (iii) such other and further relief as the Court may deem appropriate.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

Dated: Wilmington, Delaware
February 9, 2005

        Respectfully submitted,


        <u>David L. Finger</u>
        David L. Finger (DE Bar ID #2556)
        Finger & Slanina, LLC
        One Commerce Center
        1201 Orange Street, Suite 725
        Wilmington, DE  19801-1155
        (302) 884-6766

        Jesse H. Austin, III, Esq.
        Karol K. Denniston, Esq.
        PAUL, HASTINGS, JANOFSKY & WALKER LLP
        600 Peachtree Street
        Suite 2400
        Atlanta, GA 30308
        (404) 815-24000

        Attorneys for plaintiff Netexit, Inc.