IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NETEXIT, INC., *et al.*, | : Case No. 04-11321 (JLP) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : |
| NETEXIT, INC., | : Adversary Proceeding |
| | : No. 05-_____ |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| THE COMPTROLLER OF THE CITY | : |
| OF NEW YORK, | : |
| | : |
| Defendant. | : |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
STAYING PETITION BEFORE OFFICE OF ADMINISTRATIVE
<u>TRIALS AND HEARINGS</u>**

                    David L. Finger (DE Bar ID #2556)
                    Finger & Slanina, LLC
                    One Commerce Center
                    1201 Orange Street, Suite 725
                    Wilmington, DE 19801-1155
                    (302) 884-6766

                    Jesse H. Austin, III, Esq.
                    Karol K. Denniston, Esq.
                    Paul, Hastings, Janofsky & Walker LLP
                    600 Peachtree Street
                    Suite 2400
                    Atlanta, GA 30308
                    (404) 815-2400

                    Attorneys for plaintiff Netexit, Inc.

Dated: February 9, 2005

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

    I.    THE COMPTROLLER HAS VIOLATED THE AUTOMATIC STAY ................................................................................................................. 1

    II.   THE PROSECUTION OF THE PETITION SHOULD BE ENJOINED ........................................................................................................... 7

        A.    Netexit Is Likely To Succeed On the Merits. ................................ 8

        B.    The Balance Of Harms Tips Decidedly In Favor of Temporary Relief Because Netexit is Not Operating, Has No Employees, and Each of the Individuals Have Asserted Claims ............................................................................................ 9

            i)    Comptroller's Petition is Duplicative and Unnecessary ........................................................................ 9

            ii)   Diversion of Key People ..................................................... 9

            iii)  Additional Costs and Expenses......................................... 11

            iv)  Res Judicata and Collateral Estoppel ............................... 12

            v)   Lack of Harm to the Comptroller..................................... 13

        C.    The Public Interest Mandates Temporary Relief ......................... 14

CONCLUSION ................................................................................................................. 16

## **TABLE OF AUTHORITIES**

### CASES

A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986) .............................................. 6

American Telephone and Telegraph Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994)............................................................................... 14

Borman v. Raymark Industries, Inc., 946 F.2d 1031 (3d Cir. 1991) ................................ 2

Botman Int'l v. Int'l Produce Imports, Inc., No. 99-5088, 1999 WL 997752 (E.D. Pa. Nov. 4, 1999) ................................................................................................. 11

Chao v. Hospital Staffing Services, Inc., 270 F.3d 374 (6th Cir. 2001)........................... 5

Deckert v. Independent Shares Corp., 311 U.S. 282 (1940)........................................... 11

Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd., 40 F.3d 1431 (3d Cir. 1994)........ 8

Eastern AirLines v. Rollerton (In re Ionosphere Clubs, Inc.), 111 B.R. 423 (Bankr. S.D.N.Y. 1990) ...................................................................................... 10, 12

Gardner v. New Jersey, 329 U.S. 565 (1947) .................................................................. 4

Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186 (3d Cir. 1990) ..................... 12

In re 1736 18th Street N.W. Ltd. Partnership, 97 B.R. 121 (Bankr. D.D.C. 1989) ........... 3

In re American Film Technologies, Inc., 175 B.R. 847 (Bankr. D. Del. 1994)..... 8, 12, 13

In re Baldwin-United Corp. Litigation, 765 F.2d 343 (2d Cir. 1985)................................ 2

In re Carnell Construction, 424 F.2d 296 (3d Cir. 1970).................................................. 4

In re Charter First Mortgage, Inc., 42 B.R. 380 (Bankr. D. Or. 1984) ............................. 4

In re Charter Oak, 203 B.R. 17 (Bankr. D. Conn. 1996) .................................................. 4

In re Chateaugay Corp., 115 B.R. 28 (Bankr. S.D.N.Y. 1988)..................................... 5, 6

In re Christensen, 167 B.R. 213 (D. Or. 1994) ................................................................. 3

In re Continental Airlines, 177 B.R. 479 (D. Del. 1993)................................................. 10

In re Dan Hixson Chevrolet Co., 12 B.R. 917 (Bankr. N.D. Tex. 1981).......................... 3

In re Eagle-Picher Indus., Inc., 963 F.2d 855 (6th Cir. 1992) ........................................ 13

In re Pearson, 917 F.2d 1215 (9th Cir. 1990) ................................................................... 3

In re Schwartz, 954 F.2d 569 (9th Cir. 1992) ................................................................... 2

In re Torwico Electronics, Inc., 8 F.3d 146 (3d Cir. 1993) .............................................. 3

In re University Medical Center, 973 F.2d 1065 (3d Cir. 1992) .................................. 2, 4

In re USAfrica Airways Holdings, Inc., 192 B.R. 641 (D. Del. 1996)............................. 3

Langenkamp v. C.A. Culp., 498 U.S. 42 (1991)............................................................... 4

Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194 (3d Cir. 1991) ............... 2

Nat'l Union Fire Ins. v. Kozeny, 115 F.Supp. 2d 1231 (D. Colo. 2000), ........................ 15

NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934 (6th Cir. 1986) ............................ 4

Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806 (3d Cir. 1989) ........................ 8

Penn Terra Ltd. v. Department of Envtl. Resources, 733 F.2d 267 (3d Cir. 1984) ........... 3

Phar-Mor, Inc. v. General Elec. Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.), 166 B.R. 57, 61 (W.D. Pa. 1994) ................................................................................. 2

Rickel Home Ctrs. v. Baffa (In re Rickel Home Ctrs., Inc.), 199 B.R. 498 (Bankr. D. Del 1996) ........................................................................................................... 10, 13

Sudbury, Inc. v. Escott (In re Sudbury, Inc.), 140 B.R. 461 (Bankr. N.D. Ohio 1992) ........................................................................................................................... 10

Tanimura & Antel, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132 (3d Cir. 2000) ................................................................................................................... 11, 12

Toledo Trust Co. v. Poole (In re Poole), 15 B.R. 422 (Bankr. N.D. Ohio 1981) ............ 15

Travelers Int'l AG v. Robinson, 982 F.2d 96 (3d Cir. 1992) ............................................. 5

U.S. ex rel. Rahman, M.D. v. Oncology Assocs., P.C., 198 F.3d 489 (9th Cir. 1999) ............................................................................................................................. 7

U.S. v. Nicolet, Inc., 857 F.2d 202 (3d Cir. 1988) ............................................................ 2

United States (EPA) v. Environmental Waste Control, Inc., 131 B.R. 410, 422 (N.D. Ind. 1991) ................................................................................................................ 4

United States v. Energy Resources Co., 495 U.S. 545 (1990) .......................................... 2

## **STATUTES**

11 U.S.C. § 101(14) ........................................................................................................... 3

11 U.S.C. § 362(a) ........................................................................................................ 3, 12

11 U.S.C. § 362(a)(1) ........................................................................................................ 2

11 U.S.C. § 362(b)(4) ........................................................................................................ 3

11 U.S.C. §105(a)(2000) ............................................................................................. 2, 12

**PRELIMINARY STATEMENT**

Netexit, Inc. ("Netexit" or the "Debtor")[1], the plaintiff (the "Plaintiff") in the above-captioned adversary proceeding, submits this memorandum of law in support of Netexit's motion for a temporary restraining order and preliminary injunction staying a Petition before the Office of Administrative Trials and Hearings[2] (the "Motion").

**STATEMENT OF FACTS**

1. The underlying facts are set forth in the Motion filed concurrently herewith. The Court is respectfully referred thereto.

**ARGUMENT**

**I.   THE COMPTROLLER HAS VIOLATED THE AUTOMATIC STAY**

2. Without seeking relief from the automatic stay, on January 26, 2005, the Comptroller filed the Notice and Petition seeking findings that Netexit: (i) willfully violated the Contract and § 220(3) of the New York State Labor Law by failing to pay prevailing wages and bona fide wage supplements to the Workers; (ii) that as a consequence of the violation, Netexit be placed on probation for a period of five years; (iii) be assessed interest at the statutory rate of sixteen percent (16%) per annum from the date of each underpayment; and (iv) be assessed a twenty-five percent (25%) civil penalty.

3. Pursuant to Section 105(a) of the Bankruptcy Code, a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

---

[1] In addition to Netexit, Inc., the jointly administered and substantively consolidated debtors consist of the following entities: Eagle a Netexit Company Inc., Netexit of California, Inc., Netexit of California Construction, Inc., Netexit of Hawaii, Inc., Netexit of Indiana, Inc., Netexit of Indiana, LLC, Netexit of Mississippi, Inc., Netexit of New York, Inc., Netexit of Oklahoma, Inc., Netexit of Pacific Northwest, Inc., Netexit of Tennessee, Inc., Netexit of North America LLC, and ATS Financial Services, Inc. (collectively, the "Debtors").

[2] Any capitalized term used herein but not defined herein shall have the meaning given to it in the Motion.

of this title." 11 U.S.C. §105(a)(2000). Section 105 of the Bankruptcy Code was enacted to provide the Court with broad authority to ensure debtors a fresh start and to assure an orderly reorganization process for the benefit of a debtor's creditors and other parties-in-interest. *See* United States v. Energy Resources Co., 495 U.S. 545, 549 (1990). The authority granted by Section 105(a) of the Bankruptcy Code "includes the power to issue injunctions staying litigation in other courts." *See* Phar-Mor, Inc. v. General Elec. Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.), 166 B.R. 57, 61 (W.D. Pa. 1994). The automatic stay is one of the fundamental debtor protections supplied by the Bankruptcy Code. In re University Medical Center, 973 F.2d 1065, 1074 (3d Cir. 1992). The scope of the automatic stay is an issue of law. In re Baldwin-United Corp. Litigation, 765 F.2d 343, 347 (2d Cir. 1985). The automatic stay is broad and covers all proceedings against a debtor, including arbitrations, license revocations, administrative proceedings and judicial proceedings. Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1203 (3d Cir. 1991); Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1035 (3d Cir. 1991); 11 U.S.C. § 362(a)(1).

4. The automatic stay gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits a debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6296-97). Thus, it is designed to replace the "unfair race to the courthouse" with orderly liquidation that treats all creditors equally. U.S. v. Nicolet, Inc., 857 F.2d 202, 207 (3d Cir. 1988).

5. In drafting the Bankruptcy Code, Congress subjected the government, acting as a creditor, to the limitations of the automatic stay. By its terms, Section 362(a) applies to "all

entities." 11 U.S.C. § 362(a). The Bankruptcy Code defines the term "entity" as including governmental units. 11 U.S.C. § 101(14); see, e.g., In re Pearson, 917 F.2d 1215, 1216 (9th Cir. 1990), cert. denied, 503 U.S. 918 (1992); Penn Terra Ltd. v. Department of Envtl. Resources, 733 F.2d 267, 271-72 (3d Cir. 1984) ("the fact that Congress created an exception to the automatic stay for certain actions by governmental units itself implies that such units are otherwise affected by the stay").

6. Government agencies are only excepted from the reach of the automatic stay when proceeding "to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4); see also In re USAfrica Airways Holdings, Inc., 192 B.R. 641, 643-44 (D. Del. 1996) (the filing of a petition does not operate as a stay "of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.").

7. While a governmental agency can exercise its regulatory powers and force compliance with its laws, what an administrative agency cannot do is act as a creditor rather than a regulator by forcing a debtor to pay money to the agency. In re Torwico Electronics, Inc., 8 F.3d 146 (3d Cir. 1993) cert. denied, 511 U.S. 1046 (1994).

8. Section 362(b)(4)'s exemption to the automatic stay has also been held inapplicable when the governmental unit is merely adjudicating private rights. In re Christensen, 167 B.R. 213 (D. Or. 1994); In re Dan Hixson Chevrolet Co., 12 B.R. 917, 920 (Bankr. N.D. Tex. 1981) (proceedings before Texas Motor Vehicle Commission in complaint filed by franchisor seeking to terminate franchise agreement because franchisee filed for bankruptcy are subject to automatic stay); In re 1736 18th Street N.W. Ltd. Partnership, 97 B.R. 121, 123 (Bankr. D.D.C. 1989) (action by tenants before District Rent Administrator to enforce private

rights arising under tenant/landlord laws subject to automatic stay); <u>United States (EPA) v. Environmental Waste Control, Inc.</u>, 131 B.R. 410, 422 (N.D. Ind. 1991), <u>affirmed</u>, 973 F.2d 1320 (7th Cir. 1992); <u>In re Charter First Mortgage, Inc.</u>, 42 B.R. 380, 383 (Bankr. D. Or. 1984) (court must distinguish between those proceedings which fulfill a public policy and those which adjudicate private rights).[3]

9.   On December 29, 2004, the Comptroller filed the Proof of Claim as an unsecured non-priority claim in the Debtors' substantively consolidated bankruptcy cases, alleging the identical claims as set forth in the Petition.[4] The Petition ignores this Court's exclusive jurisdiction to resolve claims against the Debtors' substantively consolidated estate and seeks to force Netexit to prematurely adjudicate and pay pre-petition unsecured claims against the Debtors' substantively consolidated estate of $2,630,054.90 (including interest and civil penalties as of January 25, 2005) before OATH.

---

[3]   <u>But</u> <u>see</u> <u>NLRB v. Edward Cooper Painting, Inc.</u>, 804 F.2d 934, 942-43 (6th Cir. 1986) (automatic stay did not bar NLRB from proceeding with hearing on unfair labor practices, even though the decision could result in imposition of penalties and judgment for back pay owed employees; NLRB was primarily seeking to enforce labor laws and fix penalties for violations, not adjudicate purely private claims). However, the Sixth Circuit in <u>Cooper</u> acknowledged that section 105 gives bankruptcy courts the power to stay NLRB proceedings that are excepted from the operation of the automatic stay by section 362(b)(4), if the assets of the debtor's estate are threatened. <u>Id.</u> at 941.

[4]   Section 106(b) of the Bankruptcy Code provides that a "governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." <u>In re Charter Oak</u>, 203 B.R. 17, 21 (Bankr. D. Conn. 1996), <u>aff'd</u> 361 F.3d 760 (2d Cir. 2004). By filing a claim against the bankruptcy estate, a creditor triggers the process of "allowance and disallowance of claims," thereby subjecting itself to the bankruptcy court's equitable power. <u>Langenkamp v. C.A. Culp.</u>, 498 U.S. 42, 44 (1991). A creditor who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure. <u>Gardner v. New Jersey</u>, 329 U.S. 565, 573 (1947); <u>In re Carnell Construction</u>, 424 F.2d 296, 298 (3d Cir. 1970) ("It is settled that a creditor who proves a claim submits himself to the summary jurisdiction of the Bankruptcy Court in respect of preferences or voidable transfers, including the jurisdiction of the Bankruptcy Court to enter a monetary judgment or order a return."). The creditor's claim becomes triable only in equity. <u>Langenkamp</u>, 498 U.S. at 42.

10.     The Comptroller's Petition ignores this Court's exclusive jurisdiction.[5] Upon the filing of the Proof of Claim, this Court now has the exclusive jurisdiction to decide the Comptroller's Claims against the Debtors' substantively consolidated estate. By its Petition, the Comptroller also seeks to force a premature distribution to the detriment of Netexit's creditors. Lastly, the Petition seeks to force Netexit to prematurely adjudicate and pay pre-petition unsecured claims against the Debtors' substantively consolidated estate of $2,630,054.90 (including interest and civil penalties as of January 25, 2005).

11.     Furthermore, the Petition cannot be read to enforce the Comptroller's police or regulatory powers for the health, safety and welfare of the City of New York because Netexit is no longer an operating business and has no employees. Rather, the Comptroller seeking to end run the claims adjudication process provided for in the Bankruptcy Code by seeking to enforce private contractual rights against Netexit in violation of the automatic stay.

12.     The Court of Appeals for Sixth Circuit has concluded that a suit "seek[ing] merely to recover unpaid minimum wages, unpaid overtime, and liquidated damages, only incidentally serves the public interest." Chao v. Hospital Staffing Services, Inc., 270 F.3d 374, 391 (6th Cir. 2001). Such a suit is undertaken primarily to adjudicate private rights and "serves little public purpose other than a general interest in seeing laws enforced." Id. As in Hospital Staffing, the Comptroller's Petition against Netexit was undertaken principally to adjudicate the private claims of Netexit's former employees.

13.     Because the Debtors are no longer operating businesses, there cannot be any continuing or ongoing violations of New York State Labor Law. In re Chateaugay Corp., 115

---

[5]     A government agency formally invokes the jurisdiction of the bankruptcy court through filing a proof of claim. See In re University Medical Center, 973 F.2d 1065, 1086 (3d Cir. 1992). The Supreme Court's holdings in Granfinanciera and Langenkamp "leave little doubt that the equitable jurisdiction of the bankruptcy court is

(continued...)

B.R. 28 (Bankr. S.D.N.Y. 1988).  In Chateaugay, the Court denied the Government's request for a declaration that its claims against the debtors under the False Claims Act were excepted from the stay by Section 362(b)(4).  In substance, the court found that actions under the False Claims Act were calculated to promote the government's pecuniary interests. Id. at 31.   It further found that allowing the action to proceed would not serve the public policy of deterring further violations of the law because the offending entity was out of business. Id.  In short, the Comptroller is seeking to do the same thing, to a non-operating entity that is in the process of liquidating.  Indeed there is no rational reason for any remedy that seeks to place Netexit on probation for five years.

14.    When boiled down to its core, the Petition is brought by the Comptroller on behalf of 16 former Netexit employees – who have each hired their own counsel to assert an individual proof of claim in the Debtors' substantively consolidated bankruptcy cases - seeking the same additional wages, penalties and interest allegedly due under the Contract.

15.    The Comptroller has violated the automatic stay by initiating the Petition for the sole purpose of promoting its pecuniary interests without showing that (i) the Comptroller's Claims need to be resolved immediately; and (ii) any exigency that would permit the Comptroller, who is nothing more than a creditor of Netexit's estate, to force Netexit to pay money allegedly owed to the agency or private parties ahead of other creditors.  Section 362 is meant "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors and to provide the debtor and its executives with a

---

(...continued)
exclusive when its jurisdiction has been invoked by the filing of a claim." Travelers Int'l AG v. Robinson, 982 F.2d 96, 100 (3d Cir. 1992).

reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." A.H. Robins Co. v. Piccinin, 788 F.2d 994, 998 (4th Cir. 1986). This Court should reject the Comptroller's attempted "unfair race to the courthouse" and require the Comptroller to liquidate its claims fairly, along with all other creditors - including the individuals who have already filed claims asserting the same facts and circumstances - before this Court.

## II. THE PROSECUTION OF THE PETITION SHOULD BE ENJOINED

16. Pursuant to the Notice, a hearing has been set before OATH on the Petition for March 21-22, 2005 and Netexit's Answer is due on or before Wednesday, February 9, 2005. As set forth above, Netexit believes that the Comptroller has violated the automatic stay by filing the Petition and the Petition is automatically stayed. However, out of an abundance of caution, and given that the Notice requires an Answer on or before February 9, 2005, Netexit seeks to immediately enjoin the OATH action.

17. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings through Rule 7065 of the Federal Rules of Bankruptcy Procedure, the Court is empowered to enter a preliminary injunction enjoining the continued prosecution of the Petition. Pending a determination of whether to enter preliminary relief, the Court is also empowered to enter a temporary restraining order ("TRO"). Fed. R. Civ. P. 65(b). The purpose of both a TRO and preliminary injunction is "to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested." U.S. ex rel. Rahman, M.D. v. Oncology Assocs., P.C., 198 F.3d 489, 496 (9th Cir. 1999).

18. In determining whether to grant temporary and preliminary relief under Rule 65, the Court should consider the (1) "the likelihood that the plaintiff will prevail on the merits at a final hearing," (2) "the extent to which the plaintiff is being irreparably harmed by the conduct complained of," (3) "the extent to which the defendant will suffer irreparable harm if the preliminary injunction is granted," and (4) "the public interest." In re American Film Technologies, Inc., 175 B.R. 847, 849 (Bankr. D. Del. 1994).

19. The decision to enter a temporary restraining order and preliminary injunction rests within the sound discretion of the Court with an aim towards "minimiz[ing] the probable harm to legally protected interests between the time the motion for preliminary injunction is filed and the time of the final hearing." Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd., 40 F.3d 1431, 1438 (3d Cir. 1994); Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 814 (3d Cir. 1989).

20. Based upon the facts set forth in the Motion, the Court should enter the attached Temporary Restraining Order enjoining the Comptroller from: (i) any further violations of the automatic stay pursuant to Section 362 of the Bankruptcy Code; (ii) continuing to pursue the Petition before OATH; and (iii) attempting to collect or liquidate the Comptroller's Claims, other than through the claims resolution process in the Debtors' cases.

### A. Netexit Is Likely To Succeed On the Merits.

21. As more fully set forth above, the filing of the Petition was a clear violation of Section 362 of the Bankruptcy Code. The Comptroller has neither sought nor obtained relief from the automatic stay to make the demands contained in the Petition. The Comptroller's filing of the Petition was a clear violation of the automatic stay under Section 362 of the Bankruptcy Code.

22.     Accordingly, Netexit is likely to prevail on the merits and the Court should temporarily enjoin the Comptroller from: (i) any further violations of the automatic stay pursuant to Section 362 of the Bankruptcy Code; (ii) continuing to pursue the Petition before OATH; and (iii) attempting to collect or liquidate the Comptroller's Claims, other than through the claims resolution process in the Debtors' cases.

**B.     The Balance Of Harms Tips Decidedly In Favor of Temporary Relief Because Netexit is Not Operating, Has No Employees, and Each of the Individuals Have Asserted Claims**

### i)     Comptroller's Petition is Duplicative and Unnecessary

23.     The Petition is brought by the Comptroller on behalf of 16 former Netexit employees, who have each asserted individual proofs of claim in the Debtors' bankruptcy cases. These individual proofs of claim are duplicative of the Comptroller's Claims. The Comptroller has also filed the Proof of Claim, invoking this Court's exclusive jurisdiction to resolve the Comptroller's Claims. As a result, the OATH proceeding is unnecessary and duplicative.

24.     Additionally, Netexit is currently participating in continuing and ongoing settlement discussions with the individuals who have filed claims addressing the same facts and circumstances addressed by the Comptroller in the Petition. A temporary restraining order and a preliminary injunction are necessary and appropriate because the continued prosecution of the Petition will: (i) force Netexit to litigate the Comptroller's Claims in two separate fora, potentially resulting in completely inconsistent results; (ii) will interfere with and possibly disrupt the ongoing settlement discussions with individuals asserting the same claims as the Comptroller; and (iii) will burden the Debtors' estates with additional and unnecessary expenses.

### ii)     Diversion of Key People

25.     Netexit and the Debtors' creditors will suffer irreparable injury if the Petition is allowed to proceed. First, staying the Petition is integral to the Debtors' ability to successfully

formulate a liquidating chapter 11 plan that is fair to all creditors. Continuation of the prosecution of the Petition will divert key people, including the present officers and directors, from the Debtors' current efforts in formulating a liquidation plan. As the Petition relates to the past operation and activities of Netexit, Netexit's officers (Netexit currently has no employees) will bear the burden of providing facts and potentially responding to discovery requests. Eastern AirLines v. Rollerton (In re Ionosphere Clubs, Inc.), 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) ("The massive drain on time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts in formulating a fair and equitable plan… ."); See also Rickel Home Ctrs. v. Baffa (In re Rickel Home Ctrs., Inc.), 199 B.R. 498, 501 (Bankr. D. Del 1996) ("discovery will impose significant burdens . . . and interfere with the reorganization efforts"); Sudbury, Inc. v. Escott (In re Sudbury, Inc.), 140 B.R. 461, 463 (Bankr. N.D. Ohio 1992) ("it is clear that the Debtor and its present personnel will bear the brunt of discovery and of mounting a defense for the individual defendants"). In the Sudbury case, as in this case, the bulk of the documents and records required in the litigation were in the debtor's possession. *See id.* ("[c]ollecting, reviewing and producing these materials will necessarily involve extensive time and effort on behalf of Debtor's personnel that will impair their work on Debtor's reorganization").

26. In the instant case, if Netexit is forced to Answer the Petition, not only will Netexit incur significant costs but the Debtors may also be distracted from their efforts to finalize a liquidating chapter 11 plan for all creditors. *See* In re Continental Airlines, 177 B.R. 479, 481 (D. Del. 1993) ("since discovery in those actions would impose burdens both on the directors and on Continental, defense of these actions would substantially detract from the directors' reorganization efforts and would hinder Continental's ability to emerge successfully from

bankruptcy"). In order to successfully finalize the Debtors' plan, Netexit needs the attention and focus of key personnel which may be diverted if the Petition is allowed to proceed.

27. Additionally, as set forth above, continuation of the pursuit of the Petition against Netexit will deprive the Debtors of the protection to which they are entitled under the Bankruptcy Code and lead to depletion of the Debtors' assets. Staying the Petition is in the best interests of the Debtors' substantively consolidated estates and their creditors.

### iii) Additional Costs and Expenses

28. Another primary basis for issuing a stay in this case is to avoid the unnecessary and duplicative expenditure of significant legal fees and costs in responding to the Petition and in monitoring the OATH proceedings. The Supreme Court has long held that where a defendant's assets are in danger of dissipation or depletion, legal remedies are inadequate and a preliminary injunction is appropriate as a matter of law. Deckert v. Independent Shares Corp., 311 U.S. 282, 290 (1940). The Third Circuit has also held that where there is a substantial likelihood that but for an injunction, a plaintiff's identifiable assets will be dissipated, irreparable harm exists. See Tanimura & Antel, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 139 (3d Cir. 2000); see also Botman Int'l v. Int'l Produce Imports, Inc., No. 99-5088, 1999 WL 997752, *2 (E.D. Pa. Nov. 4, 1999) (finding irreparable harm would result from failing to grant injunctive relief because there was a likelihood that defendants would dissipate trust assets).

29. Netexit and the Debtors' creditors have a direct interest in: (i) the $2,630,054.90 of Netexit's cash being sought by the Comptroller; and (ii) the cash that will be unnecessarily expended by the Debtors' substantively consolidated estates to defend the Petition before OATH. This cash is a significant amount of estate property and once expended will have an adverse impact on other creditors' level of recovery from the Debtors. In this case, a TRO is particularly

necessary because the Answer is due on February 9, 2005 and the Comptroller has consistently refused to explain why the resolution of core claims cannot wait for the more efficient and proper claims resolution process in these cases.

30. As this Court is aware, the Debtors only have a limited amount of cash to satisfy creditors' claims in these bankruptcy proceedings. The Debtors are currently in the process of finalizing a chapter 11 plan of liquidation that treats all creditors fairly pursuant to the provisions of the Bankruptcy Code. The Comptroller should not be allowed to pursue an uncoordinated proceeding before OATH to pursue remedies – interest and penalties - unavailable under the Bankruptcy Code, to the disadvantage of other creditors.

31. Under the facts of this case, Netexit has clearly established that injunctive relief is appropriate. See Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186 (3d Cir. 1990); Tanimura, 222 F.3d at 140-41 (holding that appellants suffered irreparable injury when assets in a PACA trust were "depleted and payment was not readily forthcoming or available."). A TRO is necessary in these circumstances to return the parties to the *status quo* and to prevent the continued prosecution of the Petition before OATH pending a resolution of this adversary proceeding.

   **iv)**   **Res Judicata and Collateral Estoppel**

32. A further danger of irreparable harm to the Debtors posed by allowing the Petition to proceed against Netexit is the danger that adverse factual findings may be entered and that, as a result, the Debtors would be collaterally estopped from litigating critical factual and legal issues. See In re American Film Techs., Inc., 175 B.R. 847, 855 (Bankr. D. Del. 1994) ("because of the identity of subject matter, issues and parties involved, the . . . case squarely implicates AFT's indemnification obligations and exposes it to collateral estoppel prejudice if it does not

participate . . . [t]his conclusion justifies the invocation of Code § 105 to issue a preliminary injunction . . . in order to make effective the automatic stay of Code § 362(a)"); *see also*, In re Ionosphere Clubs, Inc., 111 B.R. at 435. The court in American Film Technologies held that the directors were being sued as agents of the debtor and that the directors' liability "exposes the corporation to both vicarious liability under the doctrine of respondeat superior . . . and the risk of being collaterally estopped from denying liability for its directors' actions." *See* In re American Film Techs., Inc., 175 B.R. at 850 (citations omitted). If an adverse finding is entered against Netexit in the OATH proceeding, the Debtors may be collaterally estopped from litigating certain critical issues and will incur significantly greater costs in defending and proceeding with their objections to the Proof of Claim.

### v) Lack of Harm to the Comptroller

33. Finally, in direct contrast to the irreparable harm that the Debtors' substantively consolidated estate will suffer, the Comptroller will suffer no harm from maintaining the *status quo*. Bankruptcy courts must balance the harm to the parties involved in determining whether to issue an injunction pursuant to Section 105 of the Bankruptcy Code. *See* In re Rickel Home Ctrs, Inc., 199 B.R. at 501 (balancing the harm caused to the plaintiffs by the passage of time and the harm caused to the debtor in allowing the litigation to proceed unchecked). Prior to and since the Petition Date, the Debtors focused significant time and energy toward their liquidation efforts. Pursuant to the Motion, Netexit is asking for the issuance of a temporary restraining order and preliminary injunction staying the Petition until further order of the Court. *See* In re American Film Techs., Inc., 175 B.R. at 849 (the court held that a further delay of limited duration would not cause the plaintiff irreparable harm); In re Eagle-Picher Indus., Inc., 963 F.2d 855, 862 (6th Cir. 1992) (upholding an order issuing a preliminary injunction which was to be in

effect for one year). Due to the limited nature of the stay requested and the ability of parties-in-interest to request relief from the stay, it is unlikely that any party's interests will be harmed by temporarily staying the Petition.

34.     The Comptroller has filed a Proof of Claim in these cases preserving the claims for future resolution. The Comptroller has not set forth any reason why the claims asserted in the Petition, which are identical to the claims contained in the Proof of Claim, need to be resolved immediately, or why this Court cannot resolve the claims in the context of the Debtors' bankruptcy proceedings. Indeed, as established by the facts set forth in the Complaint, the Comptroller has exhibited no urgency in pursuing its claims. It delayed more than one year between the time the first claim was filed, in or around December of 2002, and service of the first Notice to Produce and Examination, which is dated January 12, 2004. It then waited another full year before serving the Notice and Petition at issue on January 26, 2005. Therefore, even if the Comptroller ultimately has a right to liquidate the Comptroller's Claims before OATH, the Comptroller will suffer no harm pending a final decision by this Court.

35.     Accordingly, the Court should temporarily enjoin the Comptroller from: (i) any further violations of the automatic stay pursuant to Section 362 of the Bankruptcy Code; (ii) continuing to pursue the Petition before OATH; and (iii) attempting to collect or liquidate the Comptroller's Claims, other than through the claims resolution process in the Debtors cases.

### C.     The Public Interest Mandates Temporary Relief

36.     The public interest also compels the temporary relief requested herein. First, as discussed above, Netexit has clearly shown a likelihood of success on the merits and irreparable injury if it is not granted the relief sought. As the Third Circuit has noted, "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."

American Telephone and Telegraph Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).  Here, the public has an interest in preventing unwarranted violations of the automatic stay under Section 362 of the Bankruptcy Code.

37.   Second, and as the cases cited above demonstrate, there is a strong public policy interest in preventing the dissipation of assets pending issuance of a final judgment.  See, e.g., Toledo Trust Co. v. Poole (In re Poole), 15 B.R. 422, 434 (Bankr. N.D. Ohio 1981) (public interest "will most adequately be served" by enjoining defendant from dissipating assets in order to preserve court's power to decide case at trial and render effective relief); Nat'l Union Fire Ins. V. Kozeny, 115 F.Supp. 2d 1231, 1242 (D. Colo. 2000), aff'd, 2001 WL 1149327 (10th Cir. Sept. 28, 2001) (granting injunction for purpose of freezing assets to satisfy judgment that may ultimately be obtained).  A TRO enjoining the Comptroller from continuing to pursue the Petition before OATH and enforcing the automatic stay clearly serves the public interest.

38.   In sum, Netexit is entitled to a temporary restraining order because it has shown that in the absence of injunctive relief, it will suffer irreparable injury, that the balance of the harms weighs in its favor, that it is likely to succeed on the merits, and that an injunction is in the public interest.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, Netexit submits that sufficient cause is demonstrated for the Court to immediately enter a temporary restraining order pending hearing on the Motion and a preliminary injunction after a hearing on the Motion preliminarily enjoining the Petition pending resolution of this adversary proceeding.

Dated:  Wilmington, Delaware
         February 9, 2005

                                         Respectfully submitted,

                                         David L. Finger_____
                                         David F. Finger (DE Bar ID #2556)
                                         Finger & Slanina, LLC
                                         One Commerce Center
                                         1201 Orange Street, Suite 725
                                         Wilmington, DE  19801-1166
                                         (302) 884-6766

                                         Jesse H. Austin, III, Esq.
                                         Karol K. Denniston, Esq.
                                         PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                         600 Peachtree Street
                                         Suite 2400
                                         Atlanta, GA 30309
                                         (408) 815-2400

                                         Attorneys for plaintiff Netexit, Inc.