MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
Attorney for The Comptroller of the City of New York
100 Church Street, Room 5-234
New York, New York 10007
RITA DUMAIN (RD7662)
BARBARA MORETTI
(212) 788-0434

Hearing Date:
March 8, 2005 at 9:30 a.m.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------------- x

In re

NETEXIT, INC., *et al.*,

Debtors.

**Chapter 11**

Case No. 04-11321 (JLP)
(Jointly Administered)

---------------------------------------------------------------------- x

NETEXIT, INC.,

Plaintiff,

-v-

THE COMPTROLLER OF THE CITY OF NEW YORK,

Defendant.

Adv. Pro. No. 05-50388

---------------------------------------------------------------------- X

**MEMORANDUM OF LAW OF THE COMPTROLLER OF THE CITY OF NEW YORK IN OPPOSITION TO THE DEBTOR'S ORDER TO SHOW CAUSE WHY THE COMPTROLLER OF THE CITY OF NEW YORK IS NOT IN VIOLATION OF THE AUTOMATIC STAY; (II) TO COMPEL APPEARANCE AT MARCH 8, 2005 HEARING; AND (III) STAYING ALL PROCEEDINGS BEFORE CITY OF NEW YORK OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS**

## Preliminary Statement

The Court is respectfully referred to the factual and procedural summary set forth in the Response of the Comptroller of the City of New York In Opposition to the Debtor's Order to Show Cause dated February 14, 2005, submitted contemporaneously herewith.

## I

## AN EXAMINATION OF NEW YORK STATE LABOR LAW DEMONSTRATES THAT THE SCHEDULING OF AN OATH HEARING WAS A VALID EXERCISE OF THE COMPTROLLER'S POLICE AND REGULATORY POWER WITHIN THE MEANING OF 11 U.S.C. §362(b)(4) AND AS SUCH IS NOT SUBJECT TO THE AUTOMATIC STAY

Courts have uniformly held that the §362(b)(4) exception applies to actions seeking to enjoin, or assess penalties on account of, improper labor practices and to cause employers to make restitution payments to employees. The courts reason that those kinds of actions promote public policy by protecting legitimate businesses from unfair competition, and that they are neither intended to adjudicate private rights, nor calculated to advance the government's pecuniary interests. Ngan Gung Restaurant v. New York (In re Ngan Gung Restaurant), 183 B.R. 689, (Bankr. S.D.N.Y. 1995) (citing Eddleman v. United States Department of Labor, 923 F.2d 782 (10th Cir. 1991) (action by United States Department of Labor ("DOL") to enforce minimum wage and fringe benefit provisions of Service Contract Act ("SCA") by seeking debarment and liquidation of employee back pay claims falls within §362(b)(4) because those remedies prevent unfair competition in markets by companies paying substandard wages and further policies underlying SCA); Brock v. Rusco Industries Inc., 842 F.2d 270 (11th Cir.) (action by DOL to enforce Fair Labor Standards Act excepted from stay; the Act promotes public policy by protecting legitimate businesses from unfair competition and ensuring that debtor's employees will receive minimum wages); EEOC v. Rath Packing Co., 787 F.2d 318 (8th

Cir.) (employment discrimination action brought by Equal Employment Opportunity Commission to recover back pay held to fall within governmental regulatory exception because in vindicating individual interests, the Commission also protects the public interest in preventing employment discrimination and keeps the public from being harmed by such conduct); In re Dervos, 37 Bankr. 731 (Bankr. N.D. Ill. 1984) (action by State of Illinois to enforce state wage collection statute falls within §362(b)(4) because action protects non-governmental employees from being denied wages owed them, prevents repetition of fraudulent behavior by non-governmental employers and deters other non-governmental employers from depriving employees of wages); In re Kawano, Inc., 27 Bankr. 855 (Bankr. S.D. Cal. 1983) (action by State of California to enforce state labor laws and liquidate back-pay claim covered by regulatory exception to automatic stay because it furthers legitimate public policy of preventing unfair labor practices). Indeed, it has been expressly held that administrative hearings, such as that here, to determine the amounts of prevailing wage underpayments, are exercises of police and regulatory powers, and are not subject to the automatic stay. Travacom Communs., Inc. v. Pennsylvania (In re Travacom Communs., Inc.), 300 B.R. 635, 637 (Bankr. W.D. Pa. 2003).

Analysis of whether this prevailing wage hearing, too, is exempt from the automatic stay must begin with an examination of New York State's Labor Law. Pursuant to Sections 220, 230 and 231 of the New York State Labor Law and Sections 6-109 and 19-142 of the New York City Administrative Code, the Comptroller is the fiscal officer charged with the enforcement of prevailing wage requirements for New York City public works contracts. Upon receipt of a verified complaint alleging a prevailing wage violation, the Comptroller is required to commence a compliance investigation into whether a violation has occurred and, if proven, to conduct an inquiry into the willfulness of the alleged violation. NY CLS Labor §220(7)(a). In any such

investigation, the Comptroller is deemed to be acting in a judicial capacity and has the right to issue subpoenas, administer oaths and examine witnesses.

The Comptroller is required to make an order, determination or other disposition within six months from the commencement of a compliance investigation. The six months deadline is considered directory and while strict compliance is not mandated, the Comptroller must proceed within a reasonable time frame to avoid prejudice to the investigation. See Nelson's Lamp Lighters, Inc. v. New York State DOL, 267 A.D.2d 937, 701 N.Y.S.2d 681, (4th Dep't 1999)

If the Comptroller and the target contractor are unable to settle the matter, the Comptroller must conduct a hearing before issuing an order or determination. NY CLS Labor §220(8). A private right of action for underpayment of wages does not exist under Labor Law §220 until there has been an administrative hearing pursuant to subdivision (8) that either has gone unreviewed or been affirmed in the claimants-employees' favor. See Pesantez v. Boyle Envtl. Servs., Inc., 251 A.D.2d 11, 673 N.Y.S.2d 659 (1st Dep't 1998). See also NY CLS Labor §220(8)-(8a-c). In addition, the Comptroller is not limited to seeking recovery from the individual or contractor found to be in violation. The Comptroller may also recover prevailing wage underpayments and penalties from successors, subsidiaries, principals and other entities related to the contractor who has violated the prevailing wage law. NY CLS Labor §220-b(2), 220-b(3)(a), 220-b(4)(g) and 220(5). In sum, the New York State Labor Law sets out legal standards and procedures in the area of prevailing wage, pursuant to which the Comptroller is, in fact, exercising police and regulatory power in such enforcement actions as noticing an OATH hearing.

The regulatory and police powers exception is not limited to instances in which future harm must be stopped. The exception applies in actions to fix the amount of damages for past

conduct, whether or not that conduct is continuing. See Travacom Communs., Inc. v. Pennsylvania (In re Travacom Communs., Inc.), 300 B.R. 635, (Bankr. W.D. Pa. 2003) The mere fact that a private right of action may be available to aggrieved employees does not divest the state of a legitimate police or regulatory interest in enforcing its law.

> ...[T]hat the government seeks to liquidate employee wage claims or to compel employers to make restitution of unpaid funds, does not alter the fact that it is acting pursuant to its police and regulatory authority. Those enforcement measures further public policy by protecting employees and the markets from the harmful effects of unfair labor practices. Accordingly, numerous courts have held that government actions under both federal and state labor laws seeking remedies that were restitutionary in nature are excepted from the stay by §362(b)(4).

Ngan Gung Restaurant v. New York (In re Ngan Gung Restaurant), 183 B.R. 689, (Bankr. S.D.N.Y. 1995) (citing Eddleman v.United States Department of Labor, 923 F.2d at 791 (DOL's action to liquidate back pay claims on behalf of individual employees was not an assertion of private rights but rather another method of enforcing policies underlying Service Contract Act); EEOC v. Rath Packing Co., 787 F.2d at 324-25 (EEOC actions on behalf of private individuals also vindicate the public interest in preventing employment discrimination); Martin v. Chambers, 154 Bankr. 664 (action to redress violations of Fair Labor Standards Act by, among other things, adjudicating defendant's liability for back-wages excepted from stay); Brock v. Arlmont Services, Inc., 67 Bankr. 111 (D. Mass. 1986) (DOL action to enjoin violations of Fair Labor Standards Act and compel payment of back wages due employees excepted from stay by §362(b)(4)); In re Quinta Contractors, Inc., 34 Bankr. at 130 (DOL's administrative proceeding to establish debtor's liability under Davis-Bacon Act, including liability on unpaid employee wages under the Act, excepted from the stay).

A governmental unit exercising its police power or regulatory proceeding is specifically excepted from the automatic stay under §362(b)(4) and is not required to petition the bankruptcy

court for relief from the stay prior to continuing its proceeding. Nanticoke Consumer Prot. Div., Office of the AG. v. Nanticoke Homes, Inc. (In re Homes, Inc.), 2003 U.S. Dist. LEXIS 17704 (D. Del. Sept. 30, 2003). See also NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934 (6th Cir. 1986) Thus, the Comptroller was legally authorized to notice Debtor for a Hearing without petitioning the bankruptcy court for relief from the automatic stay.

## II

## DEBTOR HAS NOT SHOWN AND WILL BE UNABLE TO DEMONSTRATE THAT IT MEETS THE REQUIREMENTS FOR REQUESTING A PRELIMINARY OR PREMANENT INJUNCTION

A movant requesting a preliminary injunction must show (1) a likelihood of success on the merits; (2) irreparable injury; (3) that the balance of hardships tips in the movant's favor; and (4) that the requested injunction is in the public interest. Alternatively, a court may issue an injunction if the moving party demonstrates either a combination of probable success on the merits and irreparable injury or that serious questions are raised and the balance of hardships tips in his favor. See In re A. Tarricone, Inc., 77 B.R. 430, 1987 (Bankr. S.D.N.Y.1987). See also FTC v. Evans Products Co., 775 F.2d 1084, 1088-89 (9th Cir.1985).

While there is not uniformity of agreement as to whether §105 truly authorizes an injunction of an otherwise excepted regulatory or police powers action, Debtor has failed to demonstrate that an injunction of this state regulatory action is warranted.[1] See Minn. Corp. v. First Alliance Mortg. Corp. (In re First Alliance Mortg. Corp.), 264 B.R. 634,(C.D. Cal. 2001)(suggesting that the plain language of the bankruptcy code itself certainly does not suggest that §105 creates an exception to the regulatory and police powers exception and that the sole

authority for using §105 in this way is a few comments in the legislative history). See also Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303 (Bankr. S.D.N.Y. 2002) (holding the broad grant of power given to a court under Code § 105(a) does not permit it to use its equitable powers to achieve a result not contemplated by the Code, particularly where a specific section of the Code squarely addresses the issue before the court)

The Debtor provides only conclusory declarations of counsel in support of its claim of increased costs and associated expenses. Debtor's argument that allowing the prosecution to proceed would divert key people from the process of formulating a liquidation plan is not a compelling one given the fact that necessary facts of any prevailing wage violation will still need to be established within the context of the bankruptcy proceeding. While there will no doubt be somewhat higher costs and scheduling inefficiencies due to the distance between New York and the Delaware actions, the mere risk of increase in legal fees and diversion of the debtor's time and resources does not rise to the level of irreparable harm that would justify an injunction. While some courts have held that bankruptcy courts may have the power under §105(a) to enjoin governmental actions, such extraordinary relief is only available upon a showing of some harm other than inefficiency and increased litigation costs that would arise in any such situation Minn. Corp. v. First Alliance Mortg. Corp. (In re First Alliance Mortg. Corp.), 264 B.R. 634,(C.D. Cal. 2001).

Debtor also argues it may be irreparably harmed by an adverse finding in the prosecution of the labor law violation because it will be collaterally estopped from litigating critical factual and legal issues in the bankruptcy proceeding. In so arguing, Debtor ignores that fact that this Court does not have subject matter jurisdiction to determine violations of the prevailing wage law. See Pesantez v. Boyle Envtl. Servs., Inc., 251 A.D.2d 11, 673 N.Y.S.2d 659 (1st Dep't

1998). Pursuant to 28 USCS §1452, actions to enforce a governmental unit's police or regulatory power may not be removed to bankruptcy court. Moreover, when a claim is one that may properly be heard before another tribunal, allowing that claim to proceed separately, outside the bankruptcy court, is in fact the appropriate result under the bankruptcy code and does not impair the bankruptcy court's authority or jurisdiction. Minn. Corp. v. First Alliance Mortg. Corp. (In re First Alliance Mortg. Corp.), 264 B.R. 634,(C.D. Cal. 2001).

Debtor also argues that allowing the prosecution would allow claimants-employees to pursue a remedy to the disadvantage of other creditors resulting in unequal treatment of creditors. In actuality, there is little or no risk of unequal treatment. While the Comptroller would be allowed to proceed to judgment against the debtor in another forum, the Comptroller is not allowed to enforce any money judgments against the Debtor in any proceeding other than the bankruptcy proceeding. Thus, by obtaining entry of a money judgment in its favor that will then enjoy status as a claim in a bankruptcy case, the Comptroller does not gain a pecuniary advantage vis-à-vis other creditors of the bankruptcy estate contrary to the Bankruptcy Code's priorities. See Travacom Communs., Inc. v. Pennsylvania (In re Travacom Communs., Inc.), 300 B.R. 635, (Bankr. W.D. Pa. 2003)

In arguing for a stay, the Debtor ignores the compelling public interest in allowing this prosecution to proceed. Debtor reasons that because the Debtors are no longer operating a business there cannot be any continuing or ongoing violations of New York State Law justifying the imposition of fines or probationary periods. The Debtor further reasons that continued prosecution would simply serve to adjudicate private contractual rights as there is no risk of future violations of the law. However, such reasoning does not take into account the State's

interest in enjoining future labor law violations by any substantially-affiliated entity or successor-in-interest.

New York's Labor Law §220(5) was amended in 1998 to expand the definition of "substantially owned-affiliated entity." The 1998 amendment is intended to enhance the City's and the State's ability to enforce the prevailing wage law and to recover prevailing wage underpayments to workers. As noted in the Memorandum In Support of the 1997 Legislative Session, this legislation was sought because prior to its enactment, the Labor Law did not specifically enable the State Department of Labor or the New York City Comptroller, who are charged with enforcing the prevailing wage law, to withhold money form any entity other than the individual or company found to be in violation.

> Consequently, contractors frequently avoid making restitution of underpayment by bankrupting one corporate entity and creating another, which subsequently obtains other public works contracts. In this way contractors are able to evade their obligations under the law and continue doing business with government entities by simply doing business under another name. This undermines the original intent of the legislature to prevent contractors who underpay their workers from obtaining government funds and to ensure that workers receive fair wages on government projects.
>
> The legislature did not intend that corporate form and formalities would be loophole through which contractors could avoid their debts to employees; rather the remedial purposes of the statue will be better effectuated if government entities are clearly empowered to withhold payments from "shadow" or "alter ego" entities established for the purpose of sidestepping the prevailing wage law. If a fiscal officer has reason to know that an entity to which it pays money pursuant to a public works or building services contract has an otherwise unsatisfied obligation under the prevailing wage law to make restitution to its workers, the fiscal officer should be empowered to withhold such payment to wrongdoers who are unscrupulous to operate under different names on different government contracts. Furthermore, these entities should not be rewarded with future government work.
>
> This bill would close this loophole by allowing the fiscal officer to withhold payment from and enforce orders against the personal assets of

> the contractor's top shareholders and against an entity it believes has been formed by the same principals as a way of contracting with government entities but avoiding their obligations to pay workers. Another increasing problem is contractors who become bankrupt while they still owe back pay to workers; the workers than become last-in-line creditors in bankruptcy proceedings and, as a practical matter, cannot recover the wages they are owed

See Memorandum Is Support of 1997 Legislative Session annexed as Exhibit "C" to Debtor's Order to Show Cause.

Accordingly, even if all claims were discharged in bankruptcy, the Comptroller would still be obligated to proceed with the adjudication. In enacting the exception to the automatic stay, Congress recognized that enforcement of actions to protect the public health and safety merit " a higher priority than the debtor's rights to a 'cease fire' or the creditors rights to an orderly administration of the estate." Nanticoke Consumer Prot. Div., Office of the AG. v. Nanticoke Homes, Inc. (In re Homes, Inc.), 2003 U.S. Dist. LEXIS 17704 (D. Del. Sept. 30, 2003) (citing United States v. Nicolet, Inc., 857 F.2d 202, (3d Cir. Pa. 1988). An injunction of a state's regulatory action is appropriate only in the rare instances where "there is a serious conflict between the exercise of state power and the policy of the bankruptcy code." Minn. Corp. v. First Alliance Mortg. Corp. (In re First Alliance Mortg. Corp.), 264 B.R. 634,(C.D. Cal. 2001). The only harm that Debtor alleges is a diversion or energies and, hypothetically, increased litigation expenses. Such harm does not rise to the level of an irreparable injury justifying the imposition of a permanent or temporary injunction.

## III

## CONCLUSION

It is clear that the Debtor will be unable to demonstrate either an irreparable injury or that a balancing of the hardships tips in its favor. Moreover, there is strong and compelling public interest in allowing the prosecution of the prevailing wage law to proceed. For that reason, THE COMPTROLLER requests an order (a) declaring that THE OATH hearing is exempt from the automatic stay pursuant to Section 362(b)(4) of the Bankruptcy Code; and (b) denying the Debtor's request for injunctive relief pursuant to Section 105(a) and allowing the prosecution of the labor law violation to proceed without further delay.

**WHEREFORE**, it is respectfully requested that the Court issue an order denying Debtor's OTSC in its entirety and (a) declaring that THE OATH hearing is exempt from the automatic stay pursuant to Section 362(b)(4) of the Bankruptcy Code; (b) denying the Debtor's request for injunctive relief pursuant to Section 105(a) and allowing the prosecution of the labor law violation to proceed without further delay along with such other relief as this Court deems just and proper.

Dated: New York, New York
March 1, 2005

By: s/Rita D. Dumain
RITA D. DUMAIN

By: ______________________
Barbara Moretti

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for The Comptroller of the City of New York
100 Church Street, Rm. 5-234
New York, New York 10007

**CERTIFICATION OF SERVICE**

I, RITA D. DUMAIN , an attorney admitted to practice before the courts of the State of New York, do hereby certify that I caused to be served the Memorandum of Law of the Comptroller In Opposition to Debtor's Order to Show Cause pursuant to 7012(b)(1) and 6 of the Bankruptcy Code on the parties listed below by overnight express and by causing to be deposited a copy of the same, enclosed in a prepaid wrapper in a post office box situated at 100 Church Street in the Borough of New York, City of New York, regularly maintained by the Government of the United States in said City.

Dated: New York, New York
March 1, 2005

s/Rita D. Dumain
RITA D. DUMAIN

David L. Finger
Finger & Slanina, LLC
One Commerce Center
1021 Orange Street, Suite 725
Wilmington, DE 19801-1155

Jesse H. Austin, III, Esq.
Karol K. Denniston, Esq.
PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street
Suite 2400
Atlanta, Georgia