## EXHIBIT A

In re Kaiser Group International Inc., 2005 U.S. App. LEXIS 3288 (February 25, 2005)

Source: Legal > / . . . / > 3rd Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined ⓘ
Terms: name(kaiser) and date geq (02/09/2005) (Edit Search)

*2005 U.S. App. LEXIS 3288, \**

IN RE: **KAISER** GROUP INTERNATIONAL INC., Debtor, INTERNATIONAL FINANCE CORPORATION v. **KAISER** GROUP INTERNATIONAL INC., Appellant, FRANK J. PERCH, III, Trustee

No. 04-1634

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

2005 U.S. App. LEXIS 3288

December 15, 2004, Argued
**February** 25, 2005, Filed

**PRIOR HISTORY: [\*1]** On Appeal from the United States District Court for the District of Delaware. (D.C. No. 03-cv-00038). District Judge: Honorable Joseph J. Farnan, Jr. Intl Fin. Corp. v. Kaiser Group Int'l, Inc. (In re Kaiser Group Int'l, Inc.), 308 B.R. 666, 2004 U.S. Dist. LEXIS 3098 (D. Del., 2004)

**DISPOSITION:** Reversed and remanded.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant debtor sought review of a judgment of the United States District Court for the District of Delaware, which granted the motion to dismiss of appellee, a public international organization, for lack of subject matter jurisdiction, reversing a bankruptcy court's decision concluding that the debtor's claims regarding a letter of credit were within the scope of the organization's waiver of sovereign immunity under 11 U.S.C.S. § 106(b).

**OVERVIEW:** The organization filed a proof of claim to enforce the terms of a construction contract for a mini-mill and a performance guaranty. The debtor objected and filed claims against the organization, asserting both contract and equitable claims of unjust enrichment and quantum meruit against the organization. The district court had found that the debtor's claims were outside the scope of the organization's waiver. In reversing, the court found that the debtor's claim that it posted the collateral to secure the letter of credit was property of the estate for the purposes of § 106(b) and as such was within the scope of the sovereign immunity waiver. Further, the court found that the debtor's claims satisfied the same transaction or occurrence requirement of § 106(b) because there was no "maturity" component in § 106(b). The court was not required to import the compulsory counterclaim elements of Fed. R. Civ. P. 13(a) into a determination of same transaction or occurrence. Both the proof of claim and the debtor's counterclaims arose out of the construction of the mini-mill, so that they both arose out of that one complex transaction. Thus, the debtor's claims were improperly dismissed.

**OUTCOME:** The court reversed the district court's judgment and remanded, directing that the district court remand the cause to the bankruptcy court for a ruling on the merits.

**CORE TERMS:** letter of credit, proof of claim, occurrence, governmental unit, counterclaim, sovereign immunity, logical, collateral, maturity, subject matter jurisdiction, predicated, immunity, waived, minimill, compulsory, draw down, waiver of sovereign immunity, compulsory counterclaim, breach of contract, performance test, mini-mill, posted, drew, legislative history, opposing, motion to dismiss, subsidiary, italics, owed, subject matter

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule 🔍
Civil Procedure > Appeals > Standards of Review > Standards Generally 🔍
Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss 🔍
*HN1* ✚ A federal appellate court exercises plenary review over the district court's dismissal under Fed. R. Civ. P. 12(b)(1). When reviewing a facial challenge to the court's subject matter jurisdiction, an appellate court accepts all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action 🔍
*HN2* ✚ Subject matter jurisdiction can be challenged at any point before final judgment, even if challenged for the first time on appeal. The United States Court of Appeals for the Third Circuit has consistently held that the defense of lack of subject matter jurisdiction may be raised at any time. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity 🔍
Civil Procedure > Appeals > Standards of Review > Standards Generally 🔍
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action 🔍
*HN3* ✚ A courts of appeals must consider whether sovereign immunity was waived under 11 U.S.C.S. § 106(b) even though neither presented or considered below because a waiver of sovereign immunity is a prerequisite for jurisdiction. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity 🔍
*HN4* ✚ 11 U.S.C.S. § 106 sets forth the conditions under which an entity will be deemed to have waived its sovereign immunity in the bankruptcy courts. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity 🔍
*HN5* ✚ See 11 U.S.C.S. § 106(b).

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity 🔍
Bankruptcy Law > Practice & Proceedings > Adversary Proceedings 🔍
*HN6* ✚ By its terms, 11 U.S.C.S. § 106(b) limits the scope of a waiver predicated on the filing of a proof of claim to those adversarial claims that are both property of the estate and arise out of the same transaction or occurrence as the claims set forth in the proof of claim. More Like This Headnote

Bankruptcy Law > Automatic Stay 🔍
*HN7* ✚ 11 U.S.C.S. § 362 provides for an automatic stay upon the filing of a bankruptcy petition. More Like This Headnote

Banking Law > Bonds, Guarantees & Letters of Credit 🔍
Bankruptcy Law > Estate Property > Debtor Interests 🔍
*HN8* ✚ Overall, a letter of credit itself and the payments thereunder may not be property of a debtor, but the collateral pledged as a security interest for the letter of credit is. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity

Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims

*HN9* Courts shall look to the standards employed in identifying compulsory counterclaims under Fed. R. Civ. P. 13(a) for guidance in discerning the applicability of 11 U.S.C.S. § 106(a)'s waiver of immunity. The operative question in determining whether a claim is a compulsory counterclaim is whether it bears a logical relationship to the opposing party's claim. More Like This Headnote

Bankruptcy Law > Debtor Benefits, Duties & Eligibility > Effect of Discharge

Bankruptcy Law > Practice & Proceedings > Jurisdiction

Governments > Courts > Rule Application & Interpretation

*HN10* The Bankruptcy Code is intended to be both remedial and quasi-equitable. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims

*HN11* See Fed. R. Civ. P. 13(a).

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity

Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims

*HN12* There is no basis in the statutory language for requiring "maturity" of claims in the context of 11 U.S.C.S. § 106(b). "Maturity" as an element of Fed. R. Civ. P. 13(a) compulsory counterclaims is expressly set forth in the rule itself: A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party. Fed. R. Civ. P. 13(a). The bankruptcy statute, 11 U.S.C.S. § 106(b), has no comparable language and cannot be construed to incorporate the separate and distinct element of "maturity." "Maturity" is just not an element or modifier of Fed. R. Civ. P. 13(a)'s same transaction or occurrence requirement. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity

Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims

*HN13* The concept of "maturity" is simply absent from 11 U.S.C.S. § 106(b). "Maturity" is best understood in the context of Fed. R. Civ. P. 13(a) as an entirely separate element of the compulsory counterclaim analysis of Rule 13(a) and one that has no place in the operation of 11 U.S.C.S. § 106(b). More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings

Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims

*HN14* The filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure, that is, counterclaims arising out of the same transaction or occurrence. 11 U.S.C.S. § 106. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings

Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims

*HN15* Instead of examining all of Fed. R. Civ. P. 13(a) requirements, the United States Court of Appeals for the Seventh Circuit, as well as all of the other circuits that have analyzed 11 U.S.C.S. § 106(b), including the United States Court of Appeals for the Third Circuit, have focused on whether the claims of the governmental unit

and the estate arise out of the same transaction or occurrence. To define that phrase, and that phrase only, the courts have turned to Fed. R. Civ. P. 13(a) and have focused solely on a logical relationship. The operative question in determining whether a claim is a compulsory counterclaim is whether it bears a logical relationship to the opposing party's claim. More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity
Bankruptcy Law > Practice & Proceedings > Adversary Proceedings
HN16 The United States Court of Appeals for the Third Circuit expressly holds that there is no "claim maturity" requirement grafted onto the same transaction or occurrence test of 11 U.S.C.S. § 106(b).  More Like This Headnote

Bankruptcy Law > Creditor Claims & Objections > Governmental Claims > Sovereign Immunity
Bankruptcy Law > Practice & Proceedings > Adversary Proceedings
Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims
HN17 In determining what constitutes a compulsory counterclaim, tor the same transaction or occurrence test, the logical relationship standard should be construed liberally. Thus, to determine whether a logical relationship exists under 11 U.S.C.S. § 106(b), the court must examine whether the claim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant. Furthermore, it is not necessary that the parties' claims arise at the same moment. Rather, the transaction may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. More Like This Headnote

**COUNSEL:** George E. Rahn, Jr., Esq. (Argued), Saul Ewing, Philadelphia, PA, for Appellant.

Robert J. Stearn, Jr., Esq., Richards Layton & Finger, Wilmington, DE; Warren E. Zirkle, Esq., (Argued) Tysons Boulevard, McLean, VA, for Appellee.

**JUDGES:** BEFORE: NYGAARD and GARTH, Circuit Judges and POLLAK *, District Judge.

* Honorable Louis H. Pollak, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

**OPINIONBY:** George E. Rahn , Jr.

**OPINION:**

GARTH, Circuit Judge.

Appellant, Kaiser Group International ("International"), appeals from the District Court's decision granting International Finance Company's ("IFC") n1 Motion to Dismiss International's Third Amended Complaint for Lack of Subject Matter Jurisdiction. In doing so, the District Court reversed the Bankruptcy Court to the extent that the bankruptcy decision concluded that International's claims were within the scope of the waiver of sovereign immunity by IFC pursuant to 11 U.S.C. § 106(b) **[*2]** .

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 IFC is an international organization composed of member states, including the United

States and the Czech Republic. As a public international organization, IFC is entitled to the privileges, exemptions, and immunities conferred by the <u>International Organizations Immunities Act</u>, including sovereign immunity, a subject discussed in text *infra*.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

On appeal, International argues that its claims fall within the scope of IFC's waiver of sovereign immunity, thereby conferring subject matter jurisdiction on the bankruptcy court. It contends that its claims are both property of the estate and arise out of the same transaction or occurrence as the Proof of Claim filed by IFC in International's bankruptcy proceeding and that, therefore, the claims asserted by International in the Third Amended Complaint are viable and should be considered on the merits. We agree.

Accordingly, we will reverse the judgment of the District Court, remand to the District Court, and direct that the District Court remand this case **[*3]** to the Bankruptcy Court so that there may be a ruling on the merits of International's Third Amended Complaint.

I.

The District Court had jurisdiction over this case as an appeal from the determination of the Bankruptcy Court under <u>28 U.S.C. § 158(a)(1)</u>. We have jurisdiction under <u>28 U.S.C. § 158 (d)</u> and <u>28 U.S.C. § 1291</u>.

The District Court dismissed the instant action upon IFC's <u>Federal Rule of Civil Procedure 12 (b)(1)</u> motion for lack of subject matter jurisdiction predicated on sovereign immunity. *HN1* ⚓We exercise plenary review over the District Court's dismissal under <u>Rule 12(b)(1)</u>. *In re Cybergenics Corp., 226 F.3d 237, 239 (3d Cir. 2000)*. When reviewing a facial challenge to this Court's subject matter jurisdiction, we accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 (3d Cir. 2002)*.

II.

As we indicated above, because the present appeal is before us on the District Court's order granting IFC's 12(b)(1) motion **[*4]** to dismiss, we must accept the allegations of the Third Amended Complaint as true and view them in the light most favorable to International. Consequently, the following factual summary is drawn from the facts as alleged in the Third Amended Complaint.

A.

On July 18, 1994, Kaiser Engineers ("Engineers") n2, a debtor subsidiary of International, entered into a Letter of Intent with Nova Hut, a Czech steel manufacturer ("Nova Hut"), pursuant to which International agreed to provide certain advisory services to Nova Hut in connection with the construction of a continuous caster and reversing rolling mill, also known as a "minimill," to be located in the Czech Republic. Nova Hut agreed to pay a fee of $ 1.5 million for those services. In order to assist Nova Hut funding the project, International eventually agreed to defer $ 510,000 of that fee. According to International, that fee was never paid.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Engineers is joined with International as a debtor in International's bankruptcy proceedings.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On November 8, 1996, International, **[*5]** Kaiser Netherlands, B.V. ("Netherlands"), a wholly-owned, non-debtor subsidiary of International, and Nova Hut, entered into a Memorandum of Understanding for the construction of the minimill which set the total purchase price for Phase 1 of the project at $ 168.5 million.

On June 27, 1997, Netherlands and Nova Hut entered into a contract for construction of Phase 1 of the minimill (the "Construction Agreement") pursuant to which Netherlands agreed to design and supply Nova Hut's existing steel mill with a "fully constructed, operational Phase 1 of the mini-mill for flat rolled products." It is undisputed that International was not a party to the Construction Agreement. In order to finance its obligations under the Construction Agreement, Nova Hut obtained a secured loan from IFC in the amount of $ 125 million.

To secure Netherlands' timely and proper design, manufacture, and construction of the mini-mill, the Construction Agreement required Netherlands to submit a performance letter of credit in the amount of $ 11.1 million (the "Letter of Credit"). The Construction Agreement provided that Nova Hut could draw down against the Letter of Credit if Netherlands breached the contract **[*6]** or failed to renew the Letter of Credit as required. First Union Bank issued the Letter of Credit on July 8, 1997 (as amended on September 15, 1998).

It is also undisputed that Netherlands, not International, is listed as the "customer" on the Letter of Credit. At the same time, according to the Third Amended Complaint, First Union Bank required International to post collateral as security for the Letter of Credit. To meet this requirement, International deposited $ 11.1 million in cash with First Union Bank.

To further ensure Netherlands' performance under the Construction Agreement, International executed a written "Guaranty of the Performance of Kaiser Netherlands" pursuant to the agreement between Nova Hut and Netherlands (the "Performance Guaranty"). This Performance Guaranty provided that if Netherlands failed to prove that the mini-mill passed the requisite performance tests, and if Netherlands was unable to correct that deficiency or pay Nova Hut what it owed, then Nova Hut would have the right to seek liquidated damages from International.

On November 7, 1997, Nova Hut granted IFC a security interest in the Construction Agreement and Performance Guaranty. Nova Hut conditionally **[*7]** assigned its rights under the Construction Contract, but not its obligations, to IFC. Netherlands and International acknowledged and consented to this conditional assignment.

Thereafter, Netherlands commenced construction of the minimill. The Construction Agreement required Netherlands to pass a four week integrated production performance test (the "Performance Test") in connection with the minimill construction. The four week performance test was run from October 16, 2000 through November 13, 2000. After completing the test, Nova Hut informed Netherlands that it had failed to prove that the mini-mill performed as required by the Construction Agreement. Thus, Nova Hut notified Netherlands that it was in default. International, however, claims that Netherlands passed that test and met all of its other contractual obligations under the Construction Agreement.

In January 2001, a dispute arose over the Letter of Credit, which was set to expire on March 7, 2001. International agreed to extend the Letter of Credit in return for Nova Hut's and IFC's representations that they would not draw on the Letter of Credit if it was extended until July 31, 2001. Despite these representations, on **[*8]** February 16, 2001, Nova Hut drew down on the $ 11.1 million Letter of Credit and terminated the Construction Agreement (allegedly

at the direction of IFC). That draw down, which International alleges was improper and in breach of the Construction Agreement and the additional agreements that it had with Nova Hut and IFC, forms the basis of the present litigation.

B.

On June 9, 2000, International and certain subsidiaries filed a petition under Chapter 11 of the Bankruptcy Code. On August 14, 2000, IFC filed a Proof of Claim in the bankruptcy case seeking recovery from International based on an assignment IFC had received from Nova Hut. It alleged claims in connection with the Performance Guaranty, the Letter of Credit and the Construction Agreement and sought damages in excess of $ 46 million. IFC further alleged that it was entitled to recover the $ 46 million from International because it had the "right to step into the shoes of Nova Hut and enforce the terms and provisions of the [Construction Contract] and the [Performance] Guaranty" pursuant to the Assignment.

At the same time, IFC stated that it was filing the Proof of Claim under the compulsion of the bar date and that **[*9]** the filing was not a consent by IFC to the jurisdiction of the court with respect to the subject matter of those claims.

On April 9, 2001, after Nova Hut drew down on the Letter of Credit, International filed an amended objection to Nova Hut's and IFC's proofs of claim and filed claims against IFC and Nova Hut. n3 In response, on June 12, 2001, IFC filed a motion for leave to withdraw its proof of claim.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 International subsequently filed its Second Amended Complaint on December 17, 2001. IFC moved to dismiss the Second Amended Complaint on June 14, 2002. The Bankruptcy Court denied that motion on October 18, 2002. IFC did not appeal that decision.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In an order dated January 9, 2002, the Bankruptcy Court granted IFC's motion, but only on the conditions that the Bankruptcy Court would retain jurisdiction over International's claims and that IFC was barred from asserting other claims against the debtors.

On October 21, 2002, International filed its Third Amended Complaint.

C.

The Third Amended Complaint alleges **[*10]** that at the time Nova Hut drew on the Letter of Credit, Netherlands had passed the Performance Test, had met all of the requirements for final acceptance of the minimill project, and was in compliance with the requirements of the Construction Amendment. Thus, the Third Amended Complaint alleges that the draw down on the Letter of Credit was wrongful and resulted in International sustaining damages of over $ 11.1 million in loss of collateral. International further charges that Nova Hut improperly drew down on the Letter of Credit at the direction of IFC.

As against IFC, International asserted both contract and equitable claims. These claims can be summarized as follows:

. First, Nova Hut and IFC are liable for breach of warranty for allegedly false representations and warranties made by Nova Hut at the direction of IFC in connection with the draw on the Letter of Credit.

. Second, Nova Hut and IFC are liable for breach of contract in connection with agreements they had with International concerning the Letter of Credit whereby International agreed to establish the Letter of Credit on behalf of Netherlands and Nova Hut agreed not to draw on the Letter of Credit if International **[*11]** extended the Letter of Credit prior to its expiration.

. Third, as an alternative to its breach of contract claims, Nova Hut and IFC are liable to International under a theory of unjust enrichment for (1) improperly drawing on the Letter of Credit, (2) failing to pay $ 510,000 in deferred payments allegedly owed to Engineers for financial and engineering services it provided pursuant to the Letter of Intent, and (3) failing to pay $ 5.25 million allegedly owed to International for engineering and construction goods and services it provided pursuant to the Memorandum of Understanding.

. Fourth, as an alternative to its breach of contract and unjust enrichment claims, Nova Hut and IFC are liable to International under a theory of quantum meruit.

. Fifth, in the event a contract existed between Nova Hut and International or Engineers, IFC is liable for tortious interference with contract.

. Sixth, in the event no enforceable contract existed, IFC is liable for tortious interference with business relations and prospective economic advantage.

In response, IFC filed a motion to dismiss the Third Amended Complaint for lack of subject matter jurisdiction, claiming sovereign **[*12]** immunity under § 106 of the Bankruptcy Code. IFC argued that it was immune under the International Organizations Immunity Act; that IFC could not waive its immunity under § 106(b) because it was not a governmental unit or a sovereign; and that even if it could waive its immunity, it had not done so by filing the Proof of Claim.

The Bankruptcy Court ruled that IFC is a governmental unit under § 106(b) and that its filing of the Proof of Claim was an express waiver of its immunity. Consequently, in an order dated December 9, 2002, the Bankruptcy Court denied IFC's motion to dismiss.

On appeal to the District Court of Delaware, in addition to the arguments it raised before the Bankruptcy Court, IFC asserted for the first time that even if it had waived its immunity, the claims set forth in the Third Amended Complaint were outside the scope of its waiver pursuant to § 106(b). In an order dated September 30, 2003, the District Court affirmed the Bankruptcy Court's decision that IFC constituted a "governmental unit" for purposes of § 106 (b) of the Bankruptcy Code and that IFC had expressly waived its immunity by filing the Proof of Claim **[*13]** in International's bankruptcy proceeding. The District Court, after reviewing supplemental briefs which it had ordered, reversed the Bankruptcy Court's decision and held that International's claims were outside the scope of IFC's waiver of sovereign immunity under 11 U.S.C. § 106(b), and thus IFC prevailed.

With respect to International's breach of contract claims in connection with the Letter of Credit, the District Court found that those claims were not "property of the estate." Specifically, it held that because neither a letter of credit nor its proceeds are "property of the estate" under bankruptcy law, any recourse International might have, would be limited to the underlying Construction Agreement. Such a cause of action could not be "property of the estate" because International was not a party to that contract.

As for International's equitable claims, the District Court found that even assuming they were

"property of the estate," they were not within the scope of IFC's waiver, because they did not arise from the same transaction or occurrence as IFC's Proof of Claim. It so held because International's claims were predicated on events that occurred subsequent **[\*14]** to International's filing of its objections to the Proof of Claim and thus had not "matured" within the period of time prescribed by <u>Fed. R. Civ. P. 13(a)</u>. The District Court concluded, therefore, that those claims did not meet the compulsory counterclaim test under <u>Fed. R. Civ. P. 13(a)</u> and were therefore outside the scope of IFC's waiver.

By order dated February 23, 2004, the District Court dismissed International's Third Amended Complaint with prejudice for lack of subject matter jurisdiction. This timely appeal followed.

III.

As an initial matter, International asserts that IFC has waived the issues of: (1) whether its claims were "property of the estate" and (2) whether the claims arose out of the same transaction or occurrence, and therefore, cannot raise these issues on appeal. International relies on the general rule that when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal. See <u>Buncher Co. v. Official Comm. of Unsecured Creditors of Genfarm LP IV</u>, 229 F.3d 245, 253 (3d Cir. 2000). Although **[\*15]** the general rule of *Buncher* is correct, International fails to note the exception for subject matter jurisdiction, which is applicable to this case.

It is well-settled law that ^HN2^ subject matter jurisdiction can be challenged at any point before final judgment, even if challenged for the first time on appeal. See <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 124 S. Ct. 1920, 1924, 158 L. Ed. 2d 866 (2004). We have consistently held that the defense of lack of subject matter jurisdiction may be raised at any time. See, e.g., <u>Brown v. Philadelphia Hous. Auth.</u>, 350 F.3d 338, 347 (3d Cir. 2003) (citing <u>Sansom Comm. v. Lynn</u>, 735 F.2d 1535, 1538 (3d Cir. 1984) (defense that district court lacked subject matter jurisdiction to enforce consent decree may be raised for the first time on appeal)).

Specifically, we have stated that ^HN3^ Courts of Appeals must consider whether sovereign immunity was waived under <u>11 U.S.C. § 106(b)</u> even though "neither presented or considered below" because "a waiver of sovereign immunity is a prerequisite for jurisdiction." <u>In re Univ. Med. Ctr.</u>, 973 F.2d 1065, 1085 (3d Cir. 1992) **[\*16]** (citation omitted). We therefore reject International's "waiver" argument.

IV.

^HN4^ <u>11 U.S.C. § 106</u> sets forth the conditions under which an entity will be deemed to have waived its sovereign immunity in the bankruptcy courts. ^HN5^ <u>Section 106(b)</u> provides that:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

*Id*. Thus, ^HN6^ by its terms, <u>§ 106(b)</u> limits the scope of a waiver predicated on the filing of a proof of claim to those adversarial claims that are both "property of the estate" and "arise out of the same transaction or occurrence" as the claims set forth in the proof of claim.

A.

As we observed earlier, the District Court found that International's breach of contract claims concerning the Letter of Credit were not "property of the estate." It based this conclusion on the "well-established" rule of bankruptcy law that "a letter of credit and the proceeds therefrom are not property of the debtor's **[*17]** estate." _Matter of Compton Corp._, 831 F.2d 586, 589 (5th Cir. 1987) (citations omitted); _see also Hechinger Inv. Co. of Del., Inc. v. Allfirst Bank (In re Hechinger Inv. Co. of Del., Inc.),_ 282 B.R. 149, 161 (D. Del. 2002). Instead, a debtor seeking to remedy an improper draw on a letter of credit is limited to a cause of action on the underlying contract. _See Demczyk v. Mutual Life Ins. Co. (In re Graham Square), 126 F.3d 823, 827 (6th Cir. 1997)._ Because the District Court found that International was not a party to the Construction Agreement upon which the Letter of Credit was based, it found that International's claim for $ 11.1 million predicated on Nova Hut's improper draw down was not "property of the [International] estate" and could not be recovered by International.

On appeal, International argues that the general "well-established" rule of letter of credit jurisprudence relied upon by the District Court is not applicable in this case. In the typical case, a debtor either seeks to enjoin n4 a bank's distribution of the proceeds of a letter of credit or to recover the bank's distribution as a voidable preference or unauthorized postpetition transfer. n5 _See, e.g., In re Hechinger Inv. Co. of Del._ **[*18]** _, Inc.,_ 2001 Bankr. LEXIS 148, No. 99-2261 (Bankr. D. Del. 2001). Such challenges to the distribution of proceeds of a letter of credit are barred in the routine letter of credit case. _See In re Graham Square, Inc., 126 F.3d at 827._ This rule is predicated on the "independence principle" which seeks to preserve the viability of letters of credit, whose purpose is to allow the beneficiary to draw on the money before obtaining a judgment. _See In re Sabratek Corp., 257 B.R. 732, 738 (Bankr. D. Del. 2000)._

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n4 _See_ 11 U.S.C. § 362, which provides for an automatic stay upon the filing of a bankruptcy petition.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


n5 _See_ 11 U.S.C. §§ 547 and 549.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Here, however, International is not seeking to enjoin First Union Bank's distribution of the Letter of Credit proceeds, nor is it alleging that there was a preferential payment to Nova Hut. Rather, International seeks damages against Nova Hut and IFC for the resultant loss of the collateral that International **[*19]** posted and subsequently lost as a result of Nova Hut's allegedly improper draw down on the Letter of Credit. As International argues explicitly in its opening brief, "it is this $ 11.1 million in collateral, which was posted by Kaiser International, a Debtor, that was property of the estate." Kaiser Br. at 23 n.2.

Several courts, including the Fifth, Ninth and Eleventh Circuits, have held that the collateral posted to secure a Letter of Credit is property of the estate. In _Matter of Compton_, the Fifth Circuit held expressly: _HN8_⟐"Overall, the letter of credit itself and the payments thereunder may not be property of [the] debtor, but the collateral pledged as a security interest for the letter of credit is." _831 F.2d at 590-91; see also Redback Networks, Inc. v. Mayan Networks Corp. (In re Mayan Networks Corp.), 306 B.R. 295, 299 (9th Cir. B.A.P. 2004); In re Air_

*Conditioning, Inc.*, 845 F.2d 293, 296 (11th Cir. 1988); *In re Metro Comms., Inc.*, 115 B.R. 849, 854 (W.D. Pa. 1990). Thus, as the Ninth Circuit Bankruptcy Appellate Panel noted in *In re Mayan Networks*, where the claim centers around the *collateral* pledged to the bank and *not* the distribution of **[*20]** the proceeds themselves, "the fact that letters of credit themselves are not property of the estate is a red herring." 306 B.R. at 299.

The logic and reasoning of the Fifth Circuit in *Matter of Compton* is compelling and has direct application here. Applying the "collateral" analysis of *Compton*, therefore, we hold that the District Court erred in disposing of International's claims concerning the Letter of Credit and holding that they were not "property of the estate." Taking as true the Third Amended Complaint's allegation that International, *not* Netherlands, posted the collateral to secure the Letter of Credit, it is evident that International's claim predicated on posting its own $ 11.1 million collateral constitutes "property of the estate" for purposes of § 106(b).

Indeed, the Third Amended Complaint's further alleges that International had independent agreements with Nova Hut and IFC whereby International (1) agreed to post the collateral for the Letter of Credit and (2) agreed to extend the Letter of Credit in exchange for Nova Hut's representation that it would not draw down on the Letter of Credit. Thus, International has alleged causes of action **[*21]** predicated on its own - not Netherlands' - agreements that it had with Nova Hut. International's claims are therefore "property of the estate" and assets to which its creditors in bankruptcy can look. As such, they are *within the scope* of IFC's sovereign immunity waiver under § 106(b) and should not have been dismissed. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 A claim deemed to be "outside the scope of IFC's sovereign immunity waiver under § 106(b)" as the District Court held, could not be entertained, as IFC would be protected by immunity.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

B.

The District Court also dismissed the Third Amended Complaint's claims, advanced by International, because it found that they did not satisfy the "same transaction or occurrence" requirement of § 106(b). We do not agree.

The legislative history of § 106(b) and the case law interpreting that provision make clear that [HN9]courts should look "to the standards employed in identifying compulsory counterclaims under Federal Rule of Civil Procedure 13(a) for guidance **[*22]** in discerning the applicability of section 106(a)'s waiver of immunity." *In re Univ. Med. Center*, 973 F.2d at 1086. As set forth in *In re University Medical Center*, "the operative question in determining whether a claim is a compulsory counterclaim is whether it bears a 'logical relationship' to the opposing party's claim." *Id.* (citation omitted).

The District Court never reached the issue of whether International's claims bore a logical relationship to IFC's claims. Instead, it relied on the fact that International's claims, as set forth in the Third Amended Complaint, matured *after* it filed objections to IFC's Proof of Claim. Based on that finding, the District Court concluded that the claims were not compulsory counterclaims as defined in Federal Rule of Civil Procedure 13(a) and so fell outside the scope of IFC's § 106(b) waiver. The District Court admitted that the Rule 13(a) "maturity" requirement had never been discussed in the bankruptcy context. However, it added that requirement, finding it to be appropriate in light of the "overriding policy that waivers of sovereign immunity should be narrowly construed. **[*23]** "

While the District Court correctly noted a significant policy concern in rendering its decision, it ignored the equally, if not more, compelling consideration that [HN10] the Bankruptcy Code is intended to be both remedial and quasi-equitable. Furthermore, in imposing Rule 13(a)'s maturity requirement on International's claims, the District Court failed to accord proper weight to both the language of § 106(b) itself and the authoritative case law interpreting that provision. In our view, the analogy to compulsory counterclaims begins and ends with the phrase "same transaction or occurrence." Because we hold that there is no "maturity" component in § 106(b) and because we conclude that International's claims arose from the "same transaction or occurrence" as IFC's claims, we will reverse the District Court as to that element of § 106(b) as well.

As we set forth above, 11 U.S.C. § 106(b) provides:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the *same transaction or occurrence* out of **[*24]** which the claim of such governmental unit arose.

*Id*. (italics added).

On the other hand, [HN11] Fed. R. Civ. P. 13(a) reads:

> A pleading shall state as a counterclaim any claim *which at the time of serving the pleading* the pleader has against any opposing party, if it arises out of the *transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

*Id*. (italics added).

A comparison of the two provisions reveals that [HN12] there is no basis in the statutory language for requiring "maturity" of claims in the context of § 106(b). "Maturity" as an element of Federal Rule of Civil Procedure 13(a) compulsory counterclaims is expressly set forth in the rule itself: "A pleading shall state as a counterclaim any claim *which at the time of serving the pleading* the pleader has against any opposing party." Fed. R. Civ. P. 13(a) (emphasis added). The bankruptcy statute, 11 U.S.C. § 106(b), **[*25]** has no comparable language and cannot be construed to incorporate the separate and distinct element of "maturity." "Maturity" is just not an element or modifier of Rule 13(a)'s "same transaction or occurrence" requirement.

The plain language of § 106(b), however, speaks only of "same transaction or occurrence." [HN13] The concept of "maturity" is simply absent from § 106(b). "Maturity" is best understood in the context of Rule 13(a) as an entirely separate element of the compulsory counterclaim analysis of Rule 13(a) and one that has no place in the operation of § 106(b).

Furthermore, the notes to § 106 do not support the wholesale importation of Rule 13(a)'s compulsory counterclaim elements into § 106(b) claims. The relevant legislative history of § 106(b) states:

> HN14 ⚓ The filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure . . . *that is, counterclaims arising out of the same transaction or occurrence.*

11 U.S.C. § 106 (italics added). In our view, the addition of the italicized **[*26]** phrase necessarily acts as a qualifier on the relationship between § 106(b) waivers and compulsory counterclaims. To read it otherwise, and invoke a total parallelism between § 106(b) and Rule 13(a) claims as the District Court chose to do, renders the final phrase of that legislative history meaningless.

In reaching its holding, the District Court relied on a single bankruptcy court case, *In re Pullman Const. Indus., Inc.,* 142 B.R. 280, 282-83 (Bankr. N.D. Ill. 1992), which held a counterclaim must exist at the time of the pleading for purposes of § 106(b). That case, of course, is in no way binding precedent on this Court. Furthermore, its reasoning is seriously suspect in light of later Seventh Circuit precedent. *In re Pullman* relied on the Seventh Circuit's decision in *Burlington N. R.R. v. Strong,* 907 F.2d 707 (7th Cir. 1990) - a Rule 13(a) case. However, in *In re Price,* 42 F.3d 1068 (7th Cir. 1994), an opinion filed four years after *Burlington,* the Seventh Circuit noted that reliance on *Burlington* in the bankruptcy context was misplaced. *Id.* at 1073 n.4.

HN15 ⚓ Instead of examining all of Rule 13(a) **[*27]** requirements, the Seventh Circuit, as well as all of the other circuits that have analyzed § 106(b), including the Third Circuit, have focused on whether the claims of the governmental unit and the estate arise out of the "same transaction or occurrence." To define that phrase, and that phrase only, the courts have turned to Rule 13(a) and have focused solely on a "logical relationship": "The operative question in determining whether a claim is a compulsory counterclaim is whether it bears a 'logical relationship' to the opposing party's claim." *In re Univ. Med. Center,* 973 F.2d at 1086 (citation omitted). Applying the logic and reasoning of the foregoing cases to this appeal, HN16 ⚓ we now expressly hold that there is no "claim maturity" requirement grafted onto the "same transaction or occurrence" test of § 106(b).

HN17 ⚓ Turning to the "same transaction or occurrence" test, we are instructed that the logical relationship standard should be construed liberally. *See In re Price,* 42 F.3d at 1073. Thus, to determine whether a logical relationship exists under § 106(b), we must examine whether the claim "arises from the same aggregate set of operative facts as **[*28]** the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir. 1992). Furthermore, it is not necessary that the parties' claims arise at the same moment. *See Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.),* 270 F.3d 280, 287 (6th Cir. 2001). Rather, the "transaction may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* (citation and internal quotation omitted).

On appeal, IFC cites to *William Ross, Inc. v. Biehn Constr. Inc. (In re William Ross, Inc.),* 199 B.R. 551 (W.D. Pa. 1996) and *In re Sacred Heart Hospital,* 204 B.R. 132 (E.D. Pa. 1997), both of which are non-binding and inapposite. Those lower court cases, involved claims by debtors that were asserted against *different* government agencies than the agency that filed the proof of claim. *See In re William Ross,* 199 B.R. at 554-55; *In re Sacred Heart Hosp.,* 204 B.R. at 141. Here, however, International **[*29]** asserted its claims against IFC - the same entity that filed the Proof of Claim. Thus, IFC's attempt to demonstrate that there is no logical relationship between its claims and those of International, is unpersuasive.

Instead, applying the flexible logical relationship standard enunciated above, we hold that International's claims satisfy the "same transaction or occurrence" test. Both IFC's Proof of Claim and International's counterclaims arise out of the construction of the Nova Hut minimill. That fact alone - that all of the claims and counterclaims arise out of that one complex transaction - is sufficient to demonstrate a logical relationship between the claims. n7

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 A liberal application of the logical relationship test is particularly appropriate given the fact that the present case is proceeding in bankruptcy. If the allegations of International's *Third Amended Complaint* are proven, *see* pages 9-10 *supra*, it is the *creditors* of the bankrupt estate that stand to gain from the additional assets that will inure to the estate.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*30]**

VI.

The District Court properly addressed, for the first time on appeal, the scope of IFC's waiver of sovereign immunity under § 106(b) of the Bankruptcy Code. However, the District Court's holding that International's claims were neither "property of the estate" nor part of the "same transaction or occurrence" as IFC's Proof of Claim was in error.

Accordingly, we will reverse the District Court's order of February 24, 2004, and remand to the District Court with the direction that the case be remanded to the Bankruptcy Court so that the Bankruptcy Court may rule on International's *Third Amended Complaint*, and for further proceedings consistent with this opinion.

Source: Legal > / . . . / > **3rd Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined** ⓘ
Terms: **name(kaiser) and date geq (02/09/2005)** (Edit Search)
View: Full
Date/Time: Wednesday, March 9, 2005 - 1:51 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

## **EXHIBIT B**

Proof of Claim

# 253

FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF Delaware | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Netexit, Inc., f/k/a Expanets, Inc. | Case Number<br>04-11321 (CGC) | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>**The Comptroller of the City of New York**<br><br>Name and address where notices should be sent:<br><br>Gregory Hunt, Bureau of Labor Law Rm. 1120, Office of the Comptroller, 1 Centre Street, New York, NY 10007<br><br>Telephone number: (212) 669-4746 | ☑ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |

RECEIVED
JAN 06 2005
KURTZMAN CARSON

THIS SPACE IS FOR COURT USE ONLY

| Account or other number by which creditor identifies debtor:<br>BLL # 20021215 | Check here ☐ replaces<br>if this claim ☐ amends    a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☑ Taxes
- ☑ Other  Prevailing wage & wage supplements violations

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)           (date)

**2. Date debt was incurred:**
July 2001 - December 2004

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 2,597,448.21 _____ _____ _____
(unsecured)    (secured)    (priority)    (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle
☐ Other_____

Value of Collateral:  $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any:  $_____

**6. Unsecured Nonpriority Claim** $ 2,597,448.21

☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority  $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

THIS SPACE IS FOR COURT USE ONLY

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:**  *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

| Date<br>12/29/04 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to*

0411321041230000000000001



Gregory Hunt
Counsel
Bureau of Labor Law

THE CITY OF NEW YORK
OFFICE OF THE COMPTROLLER
1 CENTRE STREET ROOM 1122
NEW YORK, N.Y. 10007-2341

WILLIAM C. THOMPSON, JR.
COMPTROLLER

TELEPHONE: (212) 669-4746
FAX NUMBER: (212) 815-8773

December 29, 2004

**VIA OVERNIGHT MAIL**
United States Bankruptcy Court, District of Delaware
824 Market Street 3rd Floor
Wilmington, Delaware 19801

Re:    In Re Netexit Inc., f/k/a Expanets, Inc., Case No. 04-11321 (CGC);
       The Office of the Comptroller of the City of New York v. Expanets, Inc., LL# 20021215

Dear Sir/Madam:

    I am the attorney assigned to the above-entitled matter. The Office of the Comptroller of the
City of New York ("Comptroller") has a claim against Expanets, Inc. ("Expanets"), an entity acquired
by Netexit, Inc. ("Netexit") for violating section 220 of the New York State Labor Law by willfully
failing to pay prevailing wage and bona fide wage supplements to sixteen (16) former employees[1]
("Complainants") between the years 2001 – 2003. The total violation sum, including interest and civil
penalty is Two Million, Five Hundred Ninety Seven Thousand, Four Hundred Forty Eight and 21/100
Dollars ($2, 597,448.21),[2] as of December 15, 2004.

    Pursuant to New York State Labor Law § 220 et seq., the Comptroller is charged with enforcing
prevailing wage laws on municipally let construction projects and, thus, is responsible for, among things,
safe-guarding and protecting the rights of these workers. As such, we file this claim to preserve the
Comptroller's lawful rights and remedies against Netexit in bankruptcy. Netexit, the successor in
interest of Expanets, is liable for all of the statutory wages and wage supplements due the
Complainants.[3]

    In addition, before the Comptroller issues a final order[4] in such matters, an administrative
evidentiary hearing is held before the Office of Administrative Trials and Hearings ("OATH").[5] In this

---

[1]    The Complainants filed complaints with the Comptroller's Office, Bureau of Labor Law, which prompted our
compliance investigation of Expanets. See N.Y. Lab. Law § 220(7) (2004). In addition, the Complainants filed a private civil
action against Netexit, and individual proof of claim forms with your office. The Complainants' private civil action has no
effect on our compliance investigation and final determination. See id. at § 220 et seq. Moreover, all sixteen (16) Complainants
are represented by Mr. Robert Valli, Jr., of Leeds Morelli & Brown. For a complete listing of the names of the Complainants
and the contact information for their attorney, see Annexed.

[2]    The interest and civil penalty is calculated through December 15, 2004 at the statutory rates of sixteen percent
(16%) per annum and twenty-five percent (25%), respectively. See N.Y. Lab. Law §§ 220(8), 220-b(2)(c), and
220-b(2)(d) (2004).

[3]    See id. at §§ 220-b(2)(g) and 220(5)(k) (2004).

[4]    See 44 RCNY § 2-02 (2004); see also, http://www.nyc.gov/html/oath.

[5]    See N.Y. Lab. Law § 220(8) (2004).

**RECEIVED**

JAN 06 2005

**KURTZMAN CARSON**

December 29, 2004                                                   Page 2
Letter to the United States Bankruptcy Court, District of Delaware

case, a hearing will be scheduled before OATH in the early part of next year 2005, and we will notify
Netexit of its time and place, as Netexit is entitled to appear.[6]

Finally, enclosed please find the Comptroller's proof of claim form[7] and the corresponding
audit report ("Underpayment Summary")[8] for your review.

Of course, if you have any questions, please feel free to contact me at the above address and
telephone number.  Thanks.

Very truly yours,

Gregory Hunt

---

6       *Id; see also* 44 RCNY § 2-01 (2004).

7       *See* Annexed.

8       *See* Annexed.  Although we based the audit report on the best available data discovered during the course
of an ongoing compliance investigation conducted by this office, pursuant to Labor Law § 220 *et seq.* the Comptroller expressly
reserves the right to change, modify, and/or alter the audit as it deems necessary.  *Id.*

# COMPLAINANT LIST

Gregory Hunt
Counsel
Bureau of Labor Law
Office of the Comptroller of New York City

**Name of Complainants who filed individual
proof of claim forms in the Netexit Case No.
04-11321 (CGC) matter**

Adams, Felix A.

Belnavis, Wayne R.

Casimir, Luidgy

Daniels, David

Fernandez, Jose

Ibarra, Victor

Lebron, Secudino

Magan, Eugenio

may, Oliver

McLeod, Walter

Mike, Roger

Paredes, Santos

Rivera, Rubin D.

Suero, Robert

Taveras, Luis

Winston, James

**Complainants' Attorney**

Robert Valli, Jr., Esq.

Leeds Morelli & Brown One Old Country Rd.
Suite 347          Carle Place, NY 11514
Tel: (516) 873-9550          Fax:
(516) 747-5024

# UNDERPAYMENT SUMMARY

## SUMMARY OF UNDERPAYMENT
## EAGLE AN EXPANETS COMPANY

| EMPLOYEE FIRST LAST | | VIOLATION | | INTEREST OF 16% CAL TO 12/15/04 | | TOTAL VIOLATION W/INTEREST | |
|---|---|---|---|---|---|---|---|
| Felix A. | Adams | $ | 35,389.07 | $ | 18,600.57 | $ | 53,989.64 | |
| Wayne R. | Belnavis | $ | 97,646.36 | $ | 43,928.69 | $ | 141,575.04 | * |
| Luidgy | Casimir | $ | 67,392.44 | $ | 26,480.13 | $ | 93,872.57 | |
| David | Daniels | $ | 68,955.68 | $ | 32,497.06 | $ | 101,452.74 | |
| Jose | Fernandez | $ | 104,814.34 | $ | 45,460.23 | $ | 150,274.57 | |
| Victor | Ibarra | $ | 113,775.28 | $ | 50,093.28 | $ | 163,868.55 | * |
| Secudino | Lebron | $ | 107,531.37 | $ | 47,471.41 | $ | 155,002.78 | |
| Eugenio | Magan | $ | 112,099.57 | $ | 47,579.59 | $ | 159,679.16 | |
| Oliver | May | $ | 83,814.32 | $ | 31,407.01 | $ | 115,221.33 | |
| Walter | McLeod | $ | 61,938.56 | $ | 23,549.09 | $ | 85,487.65 | |
| Roger | Mike | $ | 20,085.96 | $ | 7,662.23 | $ | 27,748.19 | |
| Santos | Paredes | $ | 121,266.66 | $ | 52,024.60 | $ | 173,291.25 | * |
| Rubin D. | Rivera | $ | 116,505.68 | $ | 51,286.99 | $ | 167,792.67 | |
| Robert | Suero | $ | 120,869.57 | $ | 52,499.98 | $ | 173,369.55 | |
| Luis | Taveras | $ | 116,032.13 | $ | 50,733.88 | $ | 166,766.01 | |
| James | Winston | $ | 103,278.32 | $ | 45,288.53 | $ | 148,566.85 | |
| | | $ | 1,451,395.29 | $ | 626,563.28 | $ | 2,077,958.57 | |

Civil Penalty @ 25%:  $    519,489.64

$    2,597,448.21

* Difference due to rounding

LOCATION: Various Locations
CLASSIFICATION: Electrician "A"
CONTRACT #: 20020001339

| PREV OT GROSS | PREV WAGE GROSS | WAGE DIFF | PREV SUPP BENEFIT UP TO 7 HRS | PREV SUPP BNFT THRS GROSS | PREV SUPP BNFT OT | PREV SUPP BNFT OT GROSS | PREV SUPP GROSS | BENEFIT DIFF | TOTAL VIOLATION | INT CAL TO | DAILY APR 16% | INTEREST ACCRUED | TOT VIOLA WINTE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ 64.38 | $ | $ 1,394.38 | $ 827.15 | $ 27.58 | $ 965.30 | $ 29.90 | $ 37.38 | $ 1,002.68 | $ 1,002.68 | 1,829.82 | 12/15/2004 | 0.00043836 | $ 1,006.06 | $ |
| $ | $ | $ 1,347.00 | $ 682.58 | $ 27.58 | $ 854.98 | $ 29.90 | $ | $ 854.98 | $ 735.42 | 1,474.00 | 12/15/2004 | 0.00043836 | $ 780.90 | $ |
| $ 636.25 | $ | $ 1,933.25 | $ 1,184.84 | $ 27.58 | $ 965.30 | $ 29.90 | $ 343.85 | $ 1,309.15 | $ 1,309.15 | 2,493.99 | 12/15/2004 | 0.00043836 | $ 1,360.01 | $ |
| $ 222.00 | $ | $ 1,517.00 | $ 939.62 | $ 27.58 | $ 965.30 | $ 29.90 | $ 119.60 | $ 1,084.90 | $ 1,084.90 | 2,023.92 | 12/15/2004 | 0.00043836 | $ 1,097.46 | $ |
| $ 666.00 | $ | $ 1,961.00 | $ 1,205.18 | $ 27.58 | $ 965.30 | $ 26.90 | $ 358.80 | $ 1,324.10 | $ 1,324.10 | 2,529.28 | 12/15/2004 | 0.00043836 | $ 1,363.73 | $ |
| $ 959.00 | $ | $ 2,294.00 | $ 1,412.21 | $ 27.58 | $ 965.30 | $ 29.90 | $ 538.20 | $ 1,503.50 | $ 1,503.50 | 2,915.71 | 12/15/2004 | 0.00043836 | $ 1,563.14 | $ |
| $ 277.50 | $ | $ 1,572.50 | $ 970.70 | $ 27.58 | $ 965.30 | $ 29.90 | $ 149.50 | $ 1,114.80 | $ 1,114.80 | 2,094.50 | 12/15/2004 | 0.00043836 | $ 1,118.45 | $ |
| $ 277.50 | $ | $ 1,572.50 | $ 970.70 | $ 27.58 | $ 965.30 | $ 29.90 | $ 149.50 | $ 1,114.80 | $ 1,114.80 | 2,094.50 | 12/15/2004 | 0.00043836 | $ 1,110.03 | $ |
| $ | $ | $ 1,184.00 | $ 709.76 | $ 27.58 | $ 882.56 | $ 29.90 | $ | $ 1,114.80 | $ 1,114.80 | 2,094.50 | 12/15/2004 | 0.00043838 | $ 1,103.60 | $ |
| $ | $ | $ | $ (552.60) | $ 27.58 | $ | $ 29.90 | $ | $ | $ 882.56 | 1,473.76 | 12/15/2004 | 0.00043836 | $ 772.01 | $ |
| $ 471.75 | $ | $ | $ (237.17) | $ 27.58 | $ | $ 29.90 | $ | $ | $ 764.00 | (592.60) | 12/15/2004 | 0.00043826 | $ (308.71) | $ |
| $ 1,720.50 | $ 1,766.75 | $ 1,996.14 | $ 27.58 | $ 965.30 | $ 29.90 | $ 264.15 | $ 1,219.45 | $ 1,219.45 | (237.17) | 12/15/2004 | 0.00043836 | $ (122.76) | $ |
| $ 1,620.50 | $ 3,015.50 | $ 1,844.72 | $ 27.58 | $ 965.30 | $ 29.90 | $ 926.90 | $ 1,862.20 | $ 1,862.20 | 2,315.59 | 12/15/2004 | 0.00043836 | $ 1,191.02 | $ |
| $ 1,942.50 | $ 2,954.50 | $ 1,772.18 | $ 27.58 | $ 965.30 | $ 29.90 | $ 887.50 | $ 1,832.40 | $ 1,832.40 | 3,730.92 | 12/15/2004 | 0.00043836 | $ 1,911.66 | $ |
| $ | $ 3,237.50 | $ 1,927.60 | $ 27.58 | $ 965.30 | $ 29.90 | $ 1,046.60 | $ 2,011.80 | $ 2,011.80 | 3,610.38 | 12/15/2004 | 0.00043836 | $ 1,835.90 | $ |
| $ | $ 1,164.00 | $ 709.76 | $ 27.58 | $ 682.56 | $ 29.90 | $ | $ 832.56 | $ 832.56 | 3,585.00 | 12/15/2004 | 0.00043836 | $ 2,016.44 | $ |
| | | | | | | | | | $ 832.56 | 1,552.20 | 12/15/2004 | 0.00043836 | $ 759.91 | $ |
| $ 9,371.38 | 28,226.38 | 16,481.52 | | 14,203.70 | | 4,940.98 | 19,144.68 | | 16,507.56 | 35,389.07 | | | $ 18,690.57 | $ 53 |





















